## MANN *v.* WITBECK, sheriff, &c.

Upon questions of fact, the verdict of a jury will not be disturbed, unless
clearly and palpably wrong; and when a cause is tried by the judge, with-
out a jury, the same rule is applicable.

An assignment, made by a debtor for the benefit of his creditors, is not ren-
dered fraudulent and void upon its face by a provision authorizing the
assignee " to employ suitable agents at a reasonable compensation to be
paid out of the effects assigned, and generally to adopt such measures in
relation to the settlement of the estate as will in his judgment promote the
true interest thereof."

The discretion conferred by such a provision will not be construed to mean a
discretion unlimited by the rules of law, but one to be kept within the
legal limits.

The law never gives to an instrument, by implication, an unlawful meaning;
nor will it, by implication, raise an unlawful trust.

It is well settled that two instruments, executed at the same time, and in re-
lation to the same subject matter, may be construed and taken as different
parts of the same agreement. But though two instruments are executed
by the same parties, on the same day, it does not necessarily follow that
they were both executed at the same time, and were a part of the same
transaction.

THIS was an action against the defendant, sheriff of Rensse-
laer county, for wrongfully detaining twenty one barrels of pork,
14 half barrels of pork, ten hogsheads of vinegar, 23 bagged
shoulders, ten barrels of clover seed and ten empty kegs. It
appeared that the defendant levied on and took the property
under several different executions against Charles Fales and
Francis A. Fales ; that Charles and Francis A. Fales had been
partners in business previous to the 1st of October, 1849, when
Francis A. sold out all his interest to Charles, who took all the
partnership property and effects, and was to pay the debts of the
firm. Charles Fales continued in business until the 22d of
January, 1850, when he executed an assignment to the plaintiff.
An interlineation of the words, " personal property and effects"
being made in the assignment on the 24th January, 1850, it was
again acknowledged on that day and the date changed accord-
ingly. The assignment was in the words and figures following:
" Whereas, Francis N. Mann, of the city of Troy, is indorser

Mann v. Witbeck.

for me to the amount of twenty-eight thousand and one hundred dollars. Whereas, also, I am indebted to Joseph Fales in the sum of about three hundred and seventy-five dollars, for money paid by him for freight on hogs, &c.

Now therefore, in consideration of the premises and one dollar to me in hand paid, and in order to secure the said Mann and Fales their several liabilities, and liquidate and pay the same as far as my effects will go, I, Charles Fales, of the city of Troy, do hereby bargain, sell, assign and set over, unto the said Francis N. Mann, and his legal representatives, all and every my goods, wares and merchandise and personal property and effects of every name and nature whatsoever, which are not exempt by law from execution; also all sums of money due or to become due to me; also all notes, accounts, judgments and choses in action of every name and nature; also *all rents, issues and profits of my real estate,* (which are to be applied to pay the interest on the incumbrances, the ground rents, taxes, assessments, repairs, and insurance, &c., and the balance to liquidate and pay the said liabilities,) *a particular description of which is contained in the schedule hereunto annexed.* To have and to hold the same in trust, nevertheless to pay and satisfy the said liabilities, and the interest and expenses incurred therein. And I hereby authorize the said *Mann to employ suitable agents, at a reasonable compensation, to be paid out of the effects hereby assigned, and generally to adopt such measures in relation to the settlement of my estate as will in his judgment promote the true interest thereof.* I also assign to the said Mann the lease of the store I occupy in Congress-street, and herewith deliver to him the possession thereof; also the possession of my ware house on Hill-street, and contents. If there shall be any property hereby assigned left, after paying the above liabilities, the same is to be distributed among all my other creditors, *pro rata,* in proportion to their respective claims, to all of which covenants and agreements I hereunto sign my hand and affix my seal, this 24th day of January, A. D. 1850. I, Francis N. Mann, do hereby accept of the trust

hereby granted to me the day and year aforesaid, for value received.          FRANCIS N. MANN. [L. S.]

CHARLES FALES.     [L. S.]

In presence of Norman Miller.

The words " and personal property and effects" interlined on line marked (1), before execution.

NORMAN MILLER."

" Rensselear county, ss.   On the 24th day of January, 1850, personally appeared before me, Charles Fales and Francis N. Mann, to me severally known to be the persons described in and who executed the above assignment, and they severally acknowledged the due execution thereof.

NORMAN MILLER."

A paper in the following words was proved on the part of the defendant:   " It is hereby understood and agreed that Charles Fales is to be my principal agent in selling the property this day assigned to me, and is to have a support for himself and family while so doing for his services, and not to be considered as money advanced.

Troy, January 22, 1850.          FRANCIS N. MANN."

The cause was tried at the Rensselaer circuit in April, 1852, before Mr. Justice Parker, without a jury, and judgment given for the plaintiff, with six cents damages, for the detention of the property.   The property had been delivered to the plaintiff at the commencement of the action.   The defendant appealed.

*David Buel,* for the plaintiff.

*W. A. Beach,* for the defendant.

*By the Court,* PARKER, J.   It is objected that there was no sufficient delivery of the property or change of possession under the assignment as against the execution creditors of the assignor. This objection involves questions of fact, the decision of which is devolved by the statute exclusively upon the jury, and in regard to which the verdict of a jury will not be disturbed, unless clearly and palpably wrong : and when a cause is tried by the

Mann v. Witbeck.

judge without a jury, the same rule is applicable. But I think the proof on this subject entirely satisfactory. There was proved to have been an immediate and continued change of possession. The plaintiff was daily at the store, and gave the necessary directions to the clerk and persons employed. The books were kept and bills made out, in the name of the plaintiff as assignee. The assignor remained as clerk of the plaintiff about six weeks, and was then discharged because he had fraudulently retained money for property sold, as alleged by the plaintiff. Andrew Fales, who had been a clerk for the assignor before the assignment, was retained after the assignment, being employed by the assignor, but paid by the plaintiff. He kept the keys when the plaintiff was absent, and he and Charles consulted the plaintiff in relation to the business. Charles Fales was insolvent at the time of the assignment, and all the assigned property was insufficient by upwards of $10,000 to pay the liabilities of Charles Fales on which the plaintiff was liable as indorser. All these circumstances seem to me conclusive upon the question of change of possession.

But the principal question in this cause arises upon the language of the assignment; the defendant's counsel claiming that it is fraudulent and void upon its face, because it authorized the assignee " to employ suitable agents at a reasonable compensation to be paid out of the effects assigned, and generally to adopt such measures in relation to the settlement of the estate as would in his judgment promote the true interests thereof."

The first of these clauses confers no additional authority beyond what the law would give to the assignee. The property, from its peculiar character, could not be disposed of without the assistance of others, and the assignee had the right to pay a reasonable compensation, out of the assigned effects, to those necessarily employed by him for that purpose. (*Burrill on Assignments*, 205, 442. 8 *Dana*, 247. 6 *Watts & Serg.* 300.)

But it is said the latter clause above quoted gives to the assignee too wide a discretion in the settlement of the estate. It certainly confers a discretion. It authorizes the adoption of such measures as in his judgment will promote the true interests of the

estate. Shall this be construed to mean a discretion unlimited by the rules of law, or within the legal limits? It seems to me plainly the latter will be deemed to have been intended. There is ample room for the exercise of discretion within such limits. The language is abundantly satisfied with such a construction, without imputing to the parties a design to sell on credit or do any other illegal act. The law never gives to an instrument, by implication, an unlawful meaning; nor will it raise an unlawful trust by implication. (*Tucker* v. *Tucker,* 1 *Selden,* 408.) It is a fundamental rule in the construction of an instrument susceptible of two meanings, one lawful and the other not lawful, that the former shall be adopted and the latter rejected. This principle has been recently applied to an assignment, by Mr. Justice Roosevelt, in *Bellows* v. *Partridge,* not yet reported. In that case the assignment authorized the assignee, " as soon as reasonably practicable with due regard to the rightful interests of all the parties concerned, to convert into money by sales either public or private, or by collection as the case may require, or as may in the judgment of I. F. [the assignee] be for the best advantage, all the said real and personal property, &c. and to apply the proceeds, &c. as directed in the assignment." It was objected that this clause conferred so broad a discretion as to authorize a sale on credit. But the court decided that no such illegal intent would be implied, and the assignment was held valid.

In *Whitney* v. *Krows,* (11 *Barb.* 198,) a provision in the assignment authorized the assignees " to sell and dispose of the property upon such terms and conditions as in their judgment may appear best," &c. and " to convert the same into money," and the court held it should not be construed as authorizing them to sell on credit. (*See also Cunningham* v. *Freeborn,* 1 *Edw. Ch. R.* 256 ; 11 *Wend.* 240 ; *Burrill on Assignments,* 195.) My conclusion therefore is, that the clause objected to does not invalidate the assignment.

The next objection is that the paper signed by the plaintiff and dated January 22d, 1850, was part of the assignment, and that it contained a provision for the benefit of the assignor

Mann *v.* Witbeck.

inconsistent with the good faith of the transaction. That paper was dated on the same day the assignment was executed, though the assignment was subsequently altered and re-executed two days after. It is undoubtedly settled that two instruments executed at the same time, and in relation to the same subject matter, may be construed and taken as different parts of the same agreement. (1 *Burr. Rep.* 107. 1 *John. Cas.* 91. 1 *Paige,* 455. 3 *Id.* 254.) There is no positive proof that these two papers were executed at the same time, but it is sought to be inferred from the fact that they both bore the same date and relate to the same subject matter. So far as any thing can be inferred from the language of the paper, I should suppose it was the result of a subsequent suggestion, and was signed afterwards on the same day. It alludes to the assignment as a past and not as a present transaction. Though executed on the same day it does not necessarily follow that it was executed at the same time, and was a part of the same transaction. Whether this paper is invalid on its face, for want of a consideration, is immaterial, as between these parties. That is a matter between the parties to the paper. If it was no part of the assignment it cannot be called in to invalidate it, and it is therefore unnecessary to inquire whether the support of the assignor's family would be more than a fair equivalent for his services.

No objection appears by the bill of exceptions to have been made, at the circuit, that an inventory was not annexed to the assignment. Nor does it appear that such was the fact. No evidence is returned except such as is applicable to the exceptions taken.

I have examined all the points which were made on the trial, and argued at the bar, and I think none of them are available to invalidate the plaintiff's claim to the property, under the assignment.

The motion for a new trial must be denied.

[ALBANY GENERAL TERM, December 5, 1853. *Watson, Parker* and *Wright,* Justices.]