CLARK & WOOD *vs.* DALES & DALES.

On the 30th of August, 1853, the defendants proposed to the plaintiffs, by letter, as follows: " We will engage to furnish you a boat load of flour, the last of next week, same quality sent G. and M., at $4.7-6, free to boat." This proposition was immediately answered by the plaintiffs in these words : " We will take the boat load flour, as per your proposition in yours of the 30th inst." *Held* that this was a clear and unqualified acceptance, by the plaintiffs, of the defendants' proposal, and that as soon as the plaintiffs' letter had gone beyond their control the bargain was complete, and it became mutually obligatory upon the parties, and could not be rescinded by either, without the consent of the other.

The letter of acceptance contained this inquiry : " Please say to us how we shall remit ?" *Held* that this inquiry did not qualify the acceptance of the defendants' proposition.

*Held also,* that it was competent for the parties, by a subsequent parol contract, to extend the time for the performance of the original agreement; and this without any new consideration.

And the plaintiffs being ready at the place of delivery, on the day to which the contract was extended, and willing to perform on their part, and the defendants refusing to deliver the flour ; *it was held, further,* that the true measure of damages was the difference between the contract price and the value of the flour agreed to be delivered, on that day, with interest.

When one party agrees to sell and deliver goods at a particular place, and the other agrees to receive and pay for them, an averment by the purchaser, of a readiness and willingness to receive and pay *at that place,* in case he sues for a non-delivery, is indispensably necessary to a good complaint.

But the omission to make this averment is a defect which is cured by a verdict.

On appeal, in such a case, from the judgment rendered at the circuit, the fact omitted to be averred in the complaint, will be presumed to have been proved ; inasmuch as a readiness and willingness to perform could not be proved, so as to authorize a verdict for the plaintiffs, without also proving a readiness and willingness to do so *at the place.*

This is not such a case of *variance* between the complaint and the facts found or proved as will be deemed to affect the substantial rights of the parties.

Yet an *amendment* of the complaint is admissible and appropriate, under such circumstances, for the purpose of securing certainty and harmony in the record ; and is sanctioned by § 173 of the code.

The amendment may be ordered at a general term, and without formal notice of motion for that purpose, when the object of the amendment is only to conform the complaint to the facts found, and when the record furnishes the only grounds for and against the same.

THIS was an appeal by the defendants from a judgment entered at a special term of the court. The first count of the

Clark *v.* Dales.·

complaint alleged a contract between the parties, made on the 30th day of August, 1853, for the sale and delivery by the defendants to the plaintiffs of a boat load of flour, at the plaintiffs' boat at the village of Jordan, for $4.93¾ per barrel, to be delivered during the week next following the time of making the contract. The plaintiffs alleged that they had been always ready and willing to receive and pay for the flour, but that the defendants had wholly omitted to perform on their part. The second count was in substance the same as the first, except that it alleged that the time of delivery, mentioned in the first contract, was extended one week, by the agreement of the parties. The third count was the same, except that it alleged that the flour was to be delivered in a reasonable time. The fourth count was in the like form, except that it alleged the flour was to be delivered by the 1st day of October, 1853. The fifth count was the same, except that the time of delivery was alleged to have been on the 2d day of Oct. 1853. The answer denied all the allegations in the complaint. The cause was tried at the circuit in Montgomery county, in February, 1854, before the Hon. C. L. ALLEN, J., without a jury. The justice found the following facts :

That on the 31st day of August, 1853, the defendants, who were partners and millers doing business at Jordan, in the county of Onondaga, agreed in writing, with the plaintiffs, who were partners and merchants doing business at Fort Plain, in the county of Montgomery, to sell and deliver at or to their boat at Jordan, 800 barrels of flour, upon the following terms : That the flour should be of the quality of the flour previous to that time sent by the defendants to Gilchrist & Mozer, should be delivered the last of the then next week, free of expenses, to the plaintiffs, to their boat at Jordan, in the Erie canal, and that the plaintiffs should pay the defendants for said flour at the rate of $4.91 per barrel ; in consideration of which the said plaintiffs at the same time agreed with the said defendants in writing, and promised the defendants to accept and receive the said flour at the time and place before mentioned, and to pay for it at the rate of $4.94 per barrel ; and the defendants

agreed with the plaintiffs at the same time to procure to be delivered the said flour at the time and place and in the manner aforesaid; that the time for the delivery of the said flour was by the agreement of the parties in writing, on or about the 3d of September, extended for a reasonable time, until the 1st of October, 1853, at which day the delivery of the flour at the plaintiffs' boat at Jordan, (which boat was then lying in the Erie canal at Jordan, ready for the reception of said flour,) was demanded of the defendants by the plaintiffs, and the whole amount of the purchase money, at the price agreed upon, tendered and offered to the defendants, at Jordan aforesaid; that the defendants then and there refused to accept and receive the said money, and refused and neglected to deliver the said 800 barrels of flour, or any part thereof, to the plaintiffs at their boat, pursuant to the said contract; that the plaintiffs were at all times ready and willing to accept and receive and pay for the flour at their boat at Jordan, as required by the contract; that the time for the delivery of the flour was from time to time extended at the sole request of the defendants, in writing, by the plaintiffs' consent, until the 1st of October, 1853. And the judge further found that the market value of flour of the description mentioned in the contract, which was denominated Skaneateles Lake Mill brand, was, on the 1st day of October, 1853, at Jordan, $6.50 per barrel; and he adjudged and determined as matters of law, from the above facts, 1st. That the flour was to be paid for at the rate mentioned in the contract, in cash, on the delivery at the plaintiffs' boat, at Jordan. 2d. That the plaintiffs were entitled to recover against the defendants damages for the breach of contract on their part, in neglecting and refusing to deliver the flour when demanded, on the 1st day of October, 1853. 3d. That the amount of damages the plaintiffs were entitled to recover against the defendants was the sum of twelve hundred and forty-eight dollars.

The defendants' counsel moved for a nonsuit, or dismissal of the complaint, on the following grounds: 1. That no contract for the sale and delivery of the flour had been proved, as the time and manner of payment had not been agreed upon by the parties.

Clark *v.* Dales.

2. That the complaint did not contain a statement of sufficient facts to constitute a cause of action. 3. That the plaintiffs were not entitled to recover under the first count in the complaint, for the following reasons: (1.) That it did not contain a statement of sufficient facts to constitute a cause of action; (2.) That the contract, or cause of action, if any was set up, was not proved; (3.) That the performance or readiness to perform, on the part of the plaintiffs, was not proved; (4.) That no final agreement between the parties was proved; (5.) That the plaintiffs were not entitled to recover on either of the remaining counts, for the same reasons; (6.) That the proof failed to show a cause of action. His honor the judge denied the motion, and the counsel for the defendants excepted. The defendants also excepted to the finding of the justice as to the facts.

Judgment was entered in favor of the plaintiffs for $1352.73.

*Porter & Raynor,* for the appellants. I. The complaint does not state facts sufficient to constitute a cause of action. It alleges that the defendants were to deliver the flour to the plaintiffs at their boat in Jordan. A readiness and willingness to pay the defendants at the plaintiffs' boat should have been alleged. (*Coonley* v. *Anderson,* 1 *Hill,* 519. *Porter* v. *Rose,* 12 *John.* 209. 4 *Term R.* 125. 1 *East,* 203. 2 *Bos. & Pul.* 447. 1 *id.* 320 *and n.* 4. 5 *John.* 179. 2 *id.* 207. 2 *Saund.* 252, *n.* 3. *Mont. Co. Bank* v. *Albany City Bank,* 3 *Seld.* 464.)

II. The proof entirely fails to sustain either count in the complaint. The first count alleges that the flour was to be delivered the last of the week next following the time of the making of the contract, which would be on Saturday the 10th of September. It cannot be pretended that the proof shows a readiness on the part of the plaintiffs at Jordan to receive and pay for the flour at that time. An excuse for not being so ready and willing is not set up in the complaint, and will not therefore aid the count in that respect. (*Crandall* v. *Clarke,* 7 *Barb.* 169. 1 *Chit. Pl.* 320, 321, 326. *Baldwin* v. *Munn,* 2 *Wend.* 399.) The 2d count sets forth the same contract contained in the first, and alleges that by an agreement between the parties

Clark *v.* Dales.

the time for the delivery of the flour was extended one week. It also alleges a readiness and willingness on the part of the plaintiffs to perform. It will be seen that there is no proof of the extension set forth in this count, and consequently no proof of a readiness and willingness on the part of the plaintiffs to perform on their part. The 3d count sets forth an original contract to sell and deliver within a reasonable time, &c. There is no proof tending to sustain this count. The 4th count sets forth an original contract to sell and deliver &c., on the first day of October, 1853. There is no proof tending to show such a contract. The 5th count sets forth an original contract, in substance the same as that set forth in the 4th count. To sustain an action under either of the four last counts there should be proof not only of the agreements therein set forth, but that the agreements were in writing. The letter of the plaintiffs of Sept. 5, in answer to the defendants' letter, in which they state their inability to deliver the flour as soon as was expected, so far from agreeing to any extension of time, does not even give the defendants permission to delay, and contains nothing which would forbid them from demanding a delivery of the flour on the 10th. That letter requests the defendants by return mail to fix a day when they will be able to deliver the flour. This the defendants decline to do. It is impossible therefore to maintain the position that the time for the delivery of the flour was extended either by permission or contract on the part of the plaintiffs. It cannot therefore be claimed that the contract set forth in either of the four last counts is made out by any proof extending the contract set forth in the first count, were such proof admissible for that purpose, and there can be no pretense that any such original contracts are proved. As to the first count, the court found that there was no breach by the defendants of the contract set forth in that count, inasmuch as he finds that the time for the delivery of the flour mentioned in that contract was extended by agreement between the parties until the 1st day of Oct. 1853. Consequently the recovery cannot be sustained under that count. The judgment cannot be sustained under the 1st count (which is the only one in any measure sustained by the proof) on the

Clark *v.* Dales.

ground that the proof showed an excuse for the plaintiffs not being ready and willing to pay for the flour at the time and place mentioned in that count, for the reason that proof of a fact not pleaded is unavailing. (*Field* v. *The Mayor &c. of New York*, 2 *Seld.* 179.) In order to recover under that count, the allegation in the count that the plaintiffs were ready and willing, &c. should be proved. (*Vail* v. *Rice*, 1 *Selden*, 155.)

III. There was no contract for the sale and delivery of the flour consummated. It is not pretended that an agreement was consummated, unless it be by the plaintiffs' letter of the 31st of August, 1853. Upon the question of consummating a contract by written correspondence, the following principle is laid down by Chitty in his General Practice, vol. 1st, page 118, in which he says: " If the negotiation is by letter and the last letter suggests any new or further proposition requiring some communication from the other party to complete the transaction, then no complete agreement is constituted." (*See also Slaymaker* v. *Irwin*, 4 *Whart.* 369–80.) The proposition on the part of the defendants to sell is contained in their letter of Aug. 30. The proposition is in these words : " We will engage to furnish you a boat load of flour last of next week, same quality sent Gilchrist & Mozer, at $4, 7s 6c. free to boat." The plaintiffs' answer to this proposition is in their letter of August 31, and in the following language : " We will take the boat load of flour as per your proposition in yours of the 30th inst. Please say to us how we shall remit." This question has never been answered. It will not be contended that the plaintiffs were not entitled to an answer to this inquiry, nor but that the defendants were at liberty to reply demanding payment by drafts on New York or in specie, at the time of delivery. It is clear that if the plaintiffs were entitled to an answer to their questions they had a right to accept or reject the answer. Otherwise their right to an answer would be nugatory. The plaintiffs being entitled to an answer could not of course have been made liable for non-acceptance of and non-payment for the flour until such answer was received. As it is evident therefore that owing to the state of the correspondence the defendants have never been in a situ-

ation when they could have maintained an action against the plaintiffs for non-acceptance and non-payment for the flour, had they tendered it on the 10th of September, agreeable to their proposition of the 30th of August or at any other time—it follows that the plaintiffs cannot maintain their action arising out of the same correspondence. To hold otherwise would be to discard the principle of mutuality in contracts, and to present the legal anomaly of a contract of sale in which performance may be enforced on the part of the seller without any corresponding obligation on the part of the purchaser. The minds of the parties had not met as to the time and manner of payment. In the opinion of the court it is said that "the law fixed the time and manner of payment." It is respectfully submitted that the law never fixes the time or manner of payment, except when the contract is completed and is silent in that respect. To say therefore that the law had fixed the time and manner of payment in that stage of the opinion has the appearance of assuming a conclusion. If the letter of the plaintiffs of the 31st August had not been of a character calling for a reply which might have led to a breaking off of the negotiation (which seemed apparent and to be admitted in the opinion) the contract would have been complete, and the law would then have fixed the time and manner of payment. The plaintiffs, by the inquiry put to the defendants in their letter of 31st of August, prevented the law from fixing the time and manner of payment; and thereby reserved to themselves the right of determining the time and manner of payment by express agreement with the defendants. If this action had been one against the plaintiffs for not accepting and paying for the flour, it would be unsafe and consequently unsound to hold that the inquiry was made by the plaintiffs with no object to their own benefit or convenience, in the absence of all testimony warranting such a conclusion; especially when it is apparent that the answer, or their acceptance or rejection of it, might have relieved them from the onerous duty which otherwise the law would have imposed upon them, of paying the whole amount of the purchase money in cash at the time of the delivery of the flour. It need not be said that the same rules of con-

Clark *v.* Dales.

struction hold in an action brought by them. The following doctrine is laid down by Mr. Chitty in his General Practice, at page 118 : " When the parties have contracted for themselves, no term or stipulation not expressed will be superadded by the court, although the court might readily conjecture what the parties intended or·what would be reasonable. For courts are to construe, not to make, contracts for parties which they have omitted to make for themselves." The language which in legal effect is given to the plaintiffs' letter of the 31st of August, by the opinion, is as follows : " We accept your proposition to sell at $4.94 per bbl. payable in cash on delivery of the flour next week at our boat in Jordan. But to accommodate you we will remit in any other way by draft or otherwise if you desire it." This would appear to be in direct conflict with the well settled principles above laid down by Mr. Chitty. The court below finding or deciding that the legal effect of the letter is to speak in the language given to it by him, has virtually decided that no other construction can legally be given to it, no matter how apparent it may be that the writer intended otherwise. When a writer or speaker uses a given phraseology, he can never be said in legal effect to use a different phraseology. Whether he intends to be understood in a sense which may be more clearly expressed in a different phraseology, is always a matter of fact and not of law. The court, therefore, clearly erred in holding as a matter of law that the effect of the plaintiffs' letter of August 31, was such as is expressed by the language above quoted. If any effect is to be given to the supposed intention of the plaintiffs in making the inquiry, it is by no means apparent that it was made by the plaintiffs solely with the view (as the court substantially holds) of learning how they can best accommodate the defendants in the time and manner of payment, when the answer to the inquiry might have been of such a character as would protect the plaintiffs or enable them to protect themselves against the possible necessity of obtaining and transporting to the village of Jordan about $4000 in specie in payment for the flour. The plaintiffs in their letter of the 31st of August can with as much propriety be regarded as saying, " We will take

the flour on the terms expressed in your proposition, provided the time and manner of payment or remittance will accommodate us, of which please inform us," as using the language which the court says " in legal effect" was used. That the plaintiffs did not in fact intend what the court says was the " legal effect" of their letter is apparent from their letters of the 5th and 27th of Sept. In the letter of the 5th they ask the question again with apparent earnestness, " How do you want your pay and when ?" which shows that they regarded themselves as still uninformed in that particular, and is entirely inconsistent with their having previously in substance or legal effect said (as claimed by the court,) " we accept your proposition to sell &c., payable in cash on delivery of the flour next week." In the letter of the 27th of Sept. they say, " as soon as we get the bill we will forward the pay," contemplating the previous delivery of the flour on board of their boats and the receipt of the bills by them at Fort Plain before " forwarding the pay." This is truly inconsistent with their having previously agreed to pay " in cash down at their boat at Jordan." It is submitted therefore that such was not the " legal effect," or the understanding of the plaintiffs, of their letter of August 31st. But whether such was or was not the intention of the plaintiffs is not the true question to be decided. It is this : Does it appear from the letters themselves so clear that it may be treated as a matter of law, that the plaintiffs were not entitled to an answer to the inquiry put in their letter, or if entitled to an answer that it must of necessity have been such in its legal effect as not to continue the negotiation open ? But it seems evident that they were entitled to an answer, and that the effect of the answer might have been such as to leave the contract open, seems to be equally apparent and admitted by the opinion. It will be conceded that the letters prior to and including that of August 31, are to be put together as making one written instrument. The question arises, do they make a finished or perfect instrument ? Justice Story, in *Powell and wife* v. *The Brinford Manufacturing Company,* justly remarks, that " it is dangerous to bolster up imperfect instruments by conjectures and inferences." (*See also Rawle on Cov-*

*enants for Title, p.* 109.) It is evident that the writing in this case cannot be treated as a perfect instrument unless by inferring, as the court have done, the object of the inquiry of the plaintiffs, in their letter of August 31, and that of a particular character, when it is ·possible and more than probable, that their real object was one of quite a different nature. Nor can it be treated as a contract without resorting, as the court have found it necessary, to the "addition" of "terms and stipulations not expressed," thereby, in violation of the rule above quoted from Chitty's General Practice, "making a contract for the parties which they have omitted to make for themselves." Inasmuch therefore as the inquiry of the plaintiffs in their letters as to the time and manner of payment were never answered by the defendants, it cannot be said that their minds had ever met on that point, and consequently no final agreement was constituted. It is evident that after an agreement has been once perfected it is not in the power of any one of the parties, by any thing he may say or do, to re-open it; and it is one of the most certain modes of testing the question whether a negotiation has ripened into a contract, to determine whether it is still in the power of any one of the parties to propose terms or reject those offered. The court, at fol. 100, say that "If the defendants had answered by proposing payment in specie, it might have left the contract open." While this is too plain a proposition to be denied, it seems to be equally plain, that as one of the parties had it in his power to "open the contract," or in other words to keep it open, no complete agreement had been perfected. When a contract should be in writing, to render it valid, and when it is sought to be established by a written correspondence, the silence of a party on a material feature, when interrogated in relation to it, should not be so construed as to render it a substitute for what ought to be in writing. Such, however, would seem to be the view taken by the court of the defendants' letter of the 1st of Sept. in answer to the plaintiffs' of the 31st, which was silent as to the inquiry of the plaintiffs in their letter. The court then says that the "contract is recognized," and that "the defendants intimate by their entire silence their desire and inten-

tion to permit that part of the bargain [terms or time of payment] to remain as the law made it, and the agreement therefore remained complete as before." By this it is intended substantially to say that the silence of the defendants upon the subject of the inquiry put by the plaintiffs, is equivalent to an assertion on their part; they desired the term of payment to be "cash down at the time and place of delivering the flour." It is submitted that such inference is inadmissible. But if such inference can be drawn from the silence of the defendants in their letter of Sept. 1st, it is evident that the plaintiffs did not so regard it, as they repeat the same inquiry in their letter of the 3d of September, answering the defendants' letter of the 1st of September. There is no pretense, therefore, for saying that the minds of the parties had met on that subject, because if the silence of the defendants in their letter of the 1st of Sept. is to be regarded (as the court substantially have held) as equivalent to an assertion on their part "that they claim the privilege of demanding cash at the time of delivery, it certainly cannot be said that the plaintiffs acquiesced in such assertion; otherwise they would not have again, in their letter of the 5th of September, repeated the inquiry, "How do you want your pay, and when?" The observation of the court that the defendants' letter of the 1st of Sept. recognized the "contract," and that the defendants' omission to answer "left the agreement complete as before," may be regarded as prematurely assuming that a contract or agreement had been perfected.

IV. The measure of damages was erroneous. The rule on this subject is correctly laid down by the court below, but the error consists in fixing the 1st day of October, instead of the 10th day of September, as the time at which the flour should have been "delivered by the contract," admitting that a contract resulted from the correspondence closing with the letter of Aug. 31, 1853. There can be no pretense for saying (under the rule adopted by the court below) that the difference between contract price and value on the 1st of October is the measure of damages, unless the time for the delivery of the flour had been extended to that date by a contract mutually

Clark *v.* Dales.

obligatory upon both parties, so that if the price of flour had been *less* on the 1st of October than on the 10th of September, the difference in value at that time would still have governed. That *such* a result could arise, from the nature of the transaction between the parties, will not be seriously contended. But such would be the result if a valid contract extending the time to the 1st of October had been made. There is not, however, any proof of such a contract. The plaintiffs have not only refrained from making such an extended contract, but from even giving the defendants permission to enlarge the time spoken of in the defendants' letter of 30th of August; so that they have never for a moment since the 10th of September, been prevented from demanding the flour and recovering for its non-delivery, provided the alleged original contract was valid. But if a dispensation to the defendants from a strict performance of the contract (if any) as to the time of the delivery of the flour had been given by the plaintiffs, the measure of damages in case of final non-performance, would relate back to the time of performance mentioned in the contract. Such seems to be the law as laid down in the case of *Hasbrouck* v. *Tappen,* (15 *John.* 200.)

V. The court below erred in receiving in evidence the letters dated after the 1st of September, 1853. for the reasons specified in the objection. They are no evidence of an extension of time, (for which object they were offered.) The letter of the 3d of September states a probable inability to deliver the flour as soon as expected. The plaintiffs' letter of the 5th of September, in answer, consents to no delay, but in reference to a delay asks the defendants to fix some day when they shall have the boat at Jordan, which certainly is no consent to a delay. The defendants in their letter of the 10th of September are not able to fix upon a day, but say they will do so the beginning of the week, but fail to do so. This is the defendants' last letter. Where then can evidence be found of even a permission, much less a contract, to extend the time of the delivery of the flour to the 10th of October, or any other time? (*Hasbrouck* v. *Tap-*

*pen*, 15 *John.* 200.) This evidence has influenced the court, as the report is based upon an extended contract.

VI. The court below erred in receiving the evidence of Hopcraft, objected to by the defendants' counsel. If this request of S. H. Dales had been made prior to the 10th of September, (the time of the expiration of the alleged original contract,) such evidence might be, in connection with other evidence, admissible to show a dispensation by the plaintiffs to the defendants from a strict performance. But this simple request, standing alone, and without proving or offering to prove the plaintiffs' assent to it, and more than all, after the alleged original contract had been broken, can furnish no evidence of an extension of such contract, much less of its revival.

VII. The court below erred in allowing the evidence of Boardman as to the value of wheat on the 1st day of October, 1853. The damages, so far as the value of the flour is concerned, are to be determined by the value at the time of the expiration of the written contract. (15 *John.* 200.)

*C. B. Cochrane*, for the plaintiffs. I. The proof establishes an agreement in writing between the respondents of the one part and the appellants of the other part, embracing all the legal essentials of a contract, perfect in all its parts and mutually obligatory upon the parties. (*Mactier* v. *Frith*, 6 *Wend.* 103, 115. *Vassar* v. *Camp*, 14 *Barb.* 341, 354. *Brisban* v. *Boyd*, 4 *Paige*, 17. *Chitty on Con.* 13, 14, 7*th Amer. ed.* 1 *Parsons on Con.* 400, 407.) (1.) Conceding this to have been a contract of sale, and not for work, labor and services, (10 *Barbour*, 406,) it was a contract in writing, and good under the statute of frauds. A contract required to be in writing by the statute of frauds is valid, though subscribed only by one party, if the party to be charged. (*Chit. on Con.* 71. 2 *Caines*, 117. 16 *Wend.* 460.) A letter of acceptance referring to one containing the proposition, is a perfect compliance with the statute; so an offer by letter, if accepted, though acceptance be by parol; so also, letters constitute a valid agreement in writing, though a formal agreement in writing is contemplated by the parties.

(*Chit. on Con.* 397.) The negotiation in this case was conducted and the contract consummated by letter, a mode which the law recognizes. The elements of a valid contract are the same, whatever be the mode, and these are well defined and entirely settled. There must be parties capable of contracting; there must be a subject matter, or something to contract about; there must be mutuality, a consideration, and a concurrence of mind. There must be a proposition on one side and an assent to it on the other, and the assent must embrace all the essential terms of the proposition, without addition or limitation. " Where parties are together chaffering about an article of merchandise, and one expresses a present willingness to accept of certain terms, that willingness is supposed to continue, unless it is revoked, to the close of the interview and negotiations on the same subject, and if during this time the other party says he will take the article on the terms proposed, the bargain is thereby closed." So where a proposition is sent by letter, the proposition is held to remain open, presumed to be continually repeated, until the period of acceptance, and the moment the other party deposits in the post office a letter accepting the proposition upon the terms proposed, a bargain is struck, and the contract is complete and obligatory between the parties. (4 *Paige,* 17. 6 *Wend.* 103, 115, *and all the cases first above cited.*) (2.) Another rule is, that it is not at all material by which of the parties to an agreement the words which make it one are spoken. The intent governs, and if this be clear, and expressed with sufficient definiteness, it is enough. (1 *Met.* 93.) And the subsequent acts and conduct of the parties are competent evidence to show such intent, and confirm and ratify the contract. (1 *Cush.* 89. 13 *John.* 294. 6 *Wend.* 122, 123.) Still another rule is, that all the conditions of a contract, in order to its binding obligation, need not be expressed; where not expressed the law implies them. For instance, a promissory note need not express the rate of interest, or " value received," nor a contract of sale, when payment is to be made, or in what currency, or where the thing sold shall be delivered, or the precise time of delivery. Where in these respects the contract

is silent, the law comes in and fills up the blanks, and declares the intent of the parties. (3.) Tested by these rules of law, which are familiar and well settled, was there a contract proved between these parties such as the law will enforce? Under date of August 29, the plaintiffs, residing at Fort Plain, wrote to the defendants, residing at Jordan, and propounded the following question: "How low will you sell us a boat load of flour at your mill, to be same quality as that you sold to Messrs. Gilchrist & Mozer a few days since, and to be delivered some time next week?" To this the defendants replied the next day, August 30th, and submitted for our acceptance the following proposition: "We will engage to furnish you a boat load of flour the last of next week, same quality sent Gilchrist & Mozer, at $4.7–6, free to boat. Should you decide to have it, let us know by return mail, that we may make our arrangements accordingly." By return mail the plaintiffs answered: "Gents: We will take the boat load flour as per your proposition in yours of the 30th inst." Here was a literal acceptance of the very terms of the proposition, without increase or diminution. The two make a perfect contract in writing. It is difficult to conceive of a plainer case. The minds of the parties had met as to quantity, quality, price, time and place of delivery, and as to the time and manner of payment, for that is fixed by the law. The law says, the agreement was cash on delivery of the flour at the plaintiffs' boat at Jordan; and had the words "cash on delivery" been expressed in the proposition, the contract in this respect would have been no clearer, or better understood by the parties. Do the court doubt that both of these parties perfectly well understood, as business men, that by the agreement the terms were to be cash on delivery? Did not the defendants know that by the contract they had made they would be entitled to cash on delivery? Did not the plaintiffs know that they must pay cash on delivery? The law says they knew it, and they knew it in fact. Then their minds met; the plaintiffs' letter of acceptance in no way departed from the terms of the offer, or added to it. It is manifest by the very tenor of the reply that the plaintiffs intended to close in with the offer at

Clark *v.* Dales.

a single dash of the pen, which they did, and closed the acceptance by a period. Having accepted the whole proposition, and nothing else, they then, by way of a new paragraph, go on to state the probable day of the next week when their boat would be at Jordan. The words, "be sure the quality of the flour is uniform and such as you propose to give us, and put up in good packages," are no part of the acceptance, and were never meant or regarded as qualifying either the offer or acceptance, as is manifest from the subsequent acts and conduct of the parties. But even if a part of the acceptance, it does not affect its absolute character. It was saying simply, let the flour be uniformly of the same quality as that sold to Gilchrist & Mozer, as you have agreed it should be ; not some better and some worse. It was merely a request, simply saying fulfill your contract. But the plaintiffs, after the contract was complete, write, "please say to us how we shall remit ;" and it is contended that this shows that the time and manner of payment was still an open question, and hence there was no contract. This is not the correct interpretation, nor the one which the parties have by their conduct put upon it. The plaintiffs by this language did not and could not reserve to themselves any thing. The words, "please say to us how we shall remit," were precisely equivalent to saying "command us as to how we shall remit," we have agreed to pay and expect to pay cash on delivery, but if you prefer a draft on New York or any other mode more convenient to yourselves, you have only to command us, we make the suggestion for your accommodation. The defendants did not choose to change the contract or command us in that respect, and understanding the agreement as they did, the plaintiffs went to Jordan with the money in their hand. But how can the idea of no contract be reconciled with the subsequent conduct of these defendants ? See subsequent letters. The defendants, by their letters and interviews, continued to assure the plaintiffs, though in the "midst of disappointments," that the flour should be forthcoming, that the fulfilment of the contract was but a question of time, and thus not only recognized the contract, but induced the plaintiffs to expect this

flour, and not look for a supply in any other quarter. It is too late after this to change their ground and say they were mistaken, there was no contract. They are estopped. (4.) The proof shows the plaintiffs' letter of the 31st of August was sent by return mail. The plaintiffs' boat carried 800 barrels; 800 barrels is an ordinary boat load. The flour sold Gilchrist & Mozer was the "Skaneateles Lake Mill Brand," a well known brand.

II. Whether the minds of the parties met, so as to constitute a valid contract, was a question of fact, and the finding of the judge, like the verdict of a jury, is conclusive. (1 *Cush.* 89. 13 *John.* 294.)

III. The complaint is well drawn, and the facts therein stated constitute a perfect cause of action. In an action for non-delivery of goods sold, it is sufficient to aver that the plaintiffs were always ready and willing to receive and pay at, &c. This the plaintiffs have done. (1 *Parsons*, 448, 9, *and note.* 12 *John.* 209, 211, 212. 12 *Wend.* 408. 5 *John.* 179.) The plaintiffs not only averred that they were always ready and willing to receive and pay at the place mentioned, but proved it upon the trial. "An averment that he was always ready, necessarily relates to the time of delivery." The complaint is according to approved precedents.

IV. It was not necessary that the complaint should contain an averment that the time was extended, in order to admit evidence that the plaintiffs at the request and upon the application of the defendants, had consented to or acquiesced in an extension of the time of delivery. The object of the evidence was not to show that a new contract had been made, or any stipulations of the contract changed or waived, but to show that the contract as made was kept on foot by the parties. The general rule may be, that an averment of performance will not be sustained by evidence of a legal excuse for non-performance. (7 *Barb.* 169. 8 *id.* 327.) But it is submitted, that neither the rule nor the reason of it, applies to a case of mere extension of the time of performance, when the objection comes from the party at whose request and for whose accommodation

the extension has been granted. The reason of this rule of pleading in the cases where it applies is, that the excuse of matters constituting it often forms a material issue of which the defendant has a right to be informed by the pleadings. No such reason exists in this case. The complaint is not that the defendants did not deliver the flour by the 10th of September, or did not deliver in time, by which the plaintiffs lost great gains, &c. The real complaint and breach assigned are, that the defendants refused to deliver at any time. We did not get the flour, and thereby lost great gains. This complaint is abundantly sufficient within the case of *Crane* v. *Maynard,* (12 *Wend.* 408.) Besides, as the learned justice who tried the cause, in his opinion remarks, "The defects, if any, are those which have occasioned no surprise to the defendants, nor prevented them from availing themselves of all the grounds which they could interpose." The defense, in whatever aspect it can be viewed, is inequitable, and purely technical, and if necessary, the court will direct the complaint to be amended, or deem it amended, so as to conform it to the facts proved. The power of the court, and the propriety of its exercise in this case, cannot be doubted. (*Code,* § 173. 1 *Kernan,* 237, 242.)

V. The rule and measure of damages were correctly applied. The plaintiffs, at the repeated and continued request of the defendants, had indulged the latter by consenting to an extension of the time of delivery as long as it was consistent with the plaintiffs' rights. The defendants representing each time, not that there was no "legal contract," and that they were not bound to delivery, but that in consequence of unforeseen obstacles and " disappointments," they could not deliver at the time promised. When, therefore, the plaintiffs, on the 1st day of October, demanded the flour and tendered the price, they were entitled to receive it. Consequently they are entitled by way of damages, to the difference between the contract price and the market value at that time. (2 *Sandf.* 127. 9 *Wend.* 129, 135. 24 *id.* 322.)

VI. The objections made to the introduction as evidence of the several letters which passed between the parties subse-

quent to the making of the contract, are principally upon the ground that they were not admissible under the pleadings, no extension of time being averred, and have been already sufficiently answered. The objection made to the evidence of the witness, George Hopcraft, rests upon no better foundation. An extension of the time for the delivery of articles under a written agreement, is not a waiver of any of its stipulations, but a mere enlargement for the time of its performance, and may be proved by parol. (*Chitty on Con.* 111. 9 *Wend.* 68. 15 *John.* 200. 12 *Wend.* 408. 4 *Barb.* 615.) The clear and well-reasoned opinion of Justice Allen covers all the ground presented by this case, and renders an argument by counsel quite unnecessary.

*By the Court,* BOCKES, J. On a motion for a new trial on a case, where the cause is tried by the court without jury, its decision on questions of fact is to be treated and regarded the same as would be the verdict of a jury, or the report of a referee. (*Mann* v. *Witbeck,* 17 *Barb.* 388. *Osborn* v. *Marquand,* 1 *Sandf. S. C. R.* 457. *Oakley* v. *Aspinwall,* 2 *Sandf.* 7. *Gilbert* v. *Luce,* 11 *Barb.* 91.) The decision on the facts must therefore be conclusive upon the court in bank, unless the preponderance of evidence is so great that the verdict of a jury to the same effect, on the same testimony, would be set aside, or unless there is a total failure of evidence to give the decision support. A difference of opinion where there is a conflict of evidence is not to be indulged, to affect the verdict of a jury, the report of a referee, or the decision of the court on the facts, in case of trial without jury. (*Van Steenburgh* v. *Hoffman,* 15 *Barb.* 28.) In this case, however, there is no conflict of evidence. The proof is explicit; and the principal question to be considered is whether it establishes a valid agreement between the parties.

The mode of contracting adopted by the parties in this case is well recognized by law, and possesses great merit by reason of the perspicuity and certainty generally attending it. Perhaps there is no other mode equally convenient, more satisfactory or

Clark *v.* Dales.

less liable to admit of misapprehension or misconstruction. In the case under consideration the facts are too plain to admit of doubt or mistake. The defendants proposed to the plaintiffs as follows: "We will engage to furnish you a boat load of flour, the last of next week, same quality sent Gilchrist & Mozer, at $4. 7-6, free to boat." This proposition, dated and sent on the 30th August, was answered by the plaintiffs immediately, as follows: "We will take the boat load flour as per your proposition in yours of the 30th inst." The proposition was brief and explicit, and its acceptance clear and unqualified. So soon as the letter of acceptance had gone beyond the plaintiffs' control, the bargain was complete. Nothing remained but to carry it into effect, and it became mutually obligatory upon the parties. (*Mactier* v. *Frith*, 6 *Wend.* 103. *Brisban* v. *Boyd*, 4 *Paige*, 17. *Vassar* v. *Camp*, 14 *Barb.* 341. *Story on Con.* § 384.)

It is conceded that the proposition fixed the price, kind, quality and quantity of the article, and place of delivery, and it might be added, also, that it fixed the time of delivery, for it did so with sufficient certainty. The offer was accepted without any qualification. The contract was therefore complete, and could not be rescinded by either party without the consent of the other. True, it was silent as to the time and manner of payment, but in such case the law determines that. Payment must be made in such case on delivery, and in legal currency. (*Thompson* v. *Ketcham*, 8 *John.* 189. 2 *Kent*, 496. *Story on Con.* § 803. *N. Y. Ins. Co.* v. *De Wolf*, 2 *Cow.* 57, 105, 6. *Chapman* v. *Lathrop*, 6 *id.* 110. *Cornwall* v. *Haight*, 8 *Barb.* 327.) The defendants were bound to deliver the flour, and the plaintiffs to pay for it, each according to the contract.

The letter of acceptance contained this inquiry: "Please say to us how we shall remit?" and it is contended that this inquiry qualified the acceptance of the defendants' proposition. The argument is that if the plaintiffs were entitled to an answer to this question, they had a right to accept or reject the answer, whatever it might be. Admit this, and it proves nothing affecting the original proposition and its acceptance. It was

no more than if the plaintiffs, instead of inquiring how they should remit, had inquired if the defendants would exact gold and silver in lieu of bank bills. In *Brisban* v. *Boyd*, (4 *Paige*, 17,) the letter of acceptance contained a request that the cotton should be designated and marked on joint account, and that information should be given when it was shipped. In that case it was insisted that there were conditions imposed upon the acceptance of the proposition. But the chancellor held that the letter was an unconditional acceptance of the offer to which it was an answer; and that what was said as to designating and marking the cotton and informing them of the time of shipment, was merely directory as to the manner in which they wished the cotton to be sent. The case of *Brisban* v. *Boyd*, was much more favorable to the view taken by the defendant's counsel, than is the one under consideration; for in that case there was some propriety in the suggestion that the designating, marking, and immediate information, requested, entered into and formed part of the contract. But in this case, the utmost force that can be given to the interrogatory is, that the plaintiffs by a reply wished to know whether the defendants would insist upon and exact in regard to payment, strict performance of the agreement; and it may be added, that the defendants' silence was, in legal effect, an answer that they should.

But the plaintiffs were not legally entitled to any answer to the question. The defendants so understood it, and remained silent. That they so understood it is evident from their subsesequent letters recognizing the agreement as closed and binding.

The decision filed by Justice Allen states " that the time for the delivery of the said flour was, by the agreement of the parties in writing, on or about the 3d of September, extended for a reasonable time until the 1st of October, 1853," and that such extension was granted " at the sole request of the defendants;" and further " that the plaintiffs were at all times ready and willing to accept, receive and pay for the flour," according to the contract.

The contract, as evidenced by the proposition of the 30th

Clark *v.* Dales.

August, (Tuesday) and its acceptance, the following day, (Wednesday,) specified the time of delivery as "the last of" (the then) "next week." On Thursday, the 1st of September, one of the defendants requests the plaintiffs by letter "to make it," that is the delivery, "as late in the week as they conveniently could." Two days after, and on Saturday the 3d September, the defendants address another letter to the plaintiffs in which they state that they were in the midst of disappointments, and that it would be impossible to get the flour ready as soon as was expected, but added "it shall be got out just as soon as possible." The plaintiffs, by letter dated the 5th September, (Monday) acknowledged the receipt of this letter, and inquired when the wheat would be ready for delivery. This was on Monday of the week, the last of which, by the terms of the original agreement, the flour was to be delivered. On Saturday, the 10th of September, and the last day for the delivery, the defendants answer the plaintiffs' letter, and say that in the beginning of the next week they would be able to inform them when they could deliver the flour. Notwithstanding the plaintiffs addressed to the defendants two letters, one under date of September 20th and the other September 23d, inquiring when the flour would be ready, nothing more was heard from the defendants by letter. But it seems that on the 22d or 23d of September, Stephen Dales saw one of the plaintiffs, and requested them to put off sending for the flour about a week. At the end of this week, September 30th, the plaintiffs were at the place of delivery ready to perform, and on the next day, October 1st, made a demand formally, in writing, for the flour, and offered payment. Dales refused to deliver it, and gave as a reason that "he did not consider there was a legal contract." The refusal was not put on the ground that the plaintiffs had failed in any respect to fulfill, but on the ground that there was no legal contract. It has been shown that there was, and the defendants, not having fulfilled it and having refused to perform it, must atone for the injury occasioned by their neglect and refusal. By the letter of the 5th September, the defendants promised to deliver as soon as possible; and by the letter of the 10th they

promised to inform the plaintiffs when they could deliver, and on the 22d or 23d, Dales did inform them, in substance, by requesting them to put off sending the boat for the flour about one week. To all these delays the plaintiffs acceded. It was well found, therefore, that the time of performance was extended, at the defendants' request, and with the plaintiffs' consent, to October 1st. It was competent for the parties by a subsequent contract to agree on such extension. (*Frost* v. *Everett*, 5 *Cow.* 497. *Blood* v. *Goodrich*, 9 *Wend.* 68. *Cummings* v. *Arnold*, 3 *Metc.* 486. *Crane* v. *Maynard*, 12 *Wend.* 408. 1 *John. Ch.* 22. 7 *Cowen*, 48. 1 *id.* 249.) Even the time of performance of a sealed instrument may be enlarged by parol. (*Esmond* v. *Van Benschoten*, 12 *Barb.* 366, *and cases cited.*) But the enlargement of the time of performance of an agreement under seal should be regarded rather as a waiver of strict performance, that is, the parties consent to accept performance at a future day, and when a party procures delay he shall not be allowed to urge it for his own protection. (*Young* v. *Hunter*, 2 *Seld.* 203.) In *Keating* v. *Price*, (1 *John. Cas.* 22,) the action was on a simple contract for the delivery of staves on or before the 1st of May. The defense was that the plaintiff had extended the time for delivering them until the next spring. The extension was held valid, and a nonsuit entered. This case is referred to and approved in *Dearborn* v. *Cross*, (7 *Cow.* 48, 50.) In *Erwin* v. *Saunders*, (1 *Cow.* 249,) it was held that simple contracts in writing might be varied by a parol enlargement of the time of performance. Nor is a new consideration necessary to give validity to an agreement to extend the time ; the waiver is enough for that purpose. (14 *Serg. & Rawle.* 241.) The effect of such enlargement is to substitute or adopt the extended time for the time specified in the original contract. It then stands as a new agreement, wherein the mutual promises furnish a good consideration. (*Evans* v. *Thompson*, 5 *East*, 189, 193. *Hasbrouck* v. *Tappen*, 15 *John.* 200, 204.) It is a new agreement substituted for the former one, by which the parties agree in all respects as formerly, except as to the time of performance, which they then fix for a future period. And

it is under the new substituted agreement that redress must be sought in case either should fail or refuse to perform.

It follows therefore, that on the 1st day of October, the defendants were bound to deliver the flour, and the plaintiffs to pay for it. The plaintiffs were ready at the place, and willing to perform the contract, but the defendants refused; and this brings us to the question of damages.

It has been shown that the defendants were bound to deliver the flour on the 1st day of October, and that they refused to do so. The difference therefore between the contract price and the value of the flour agreed to be delivered on that day, with interest from that period, was the true measure of damages.

It is insisted that the complaint does not state facts sufficient to constitute a cause of action; and the point of objection is, that it does not aver a readiness and willingness to pay *at the plaintiffs' boat.* The authorities and precedents are to the point, that when one agrees to sell and deliver *at a particular place,* and the other agrees to receive and pay, an averment by the purchaser of a readiness and willingness to receive and pay *at that place,* in case he sues for a non-delivery, is indispensably necessary to a good complaint. In this case the contract, as stated in each of the five counts, was, to deliver the flour at a particular place, to wit, at the boat, at Jordan, yet neither of the last four counts avers a readiness and willingness to receive and pay *at that place.* The objection, under the old practice, would have been fatal to those counts if taken by *special* demurrer. It was suggested that the words "as aforesaid," in the first count, following the averment of a readiness and willingness to receive and pay, remedied this defect in that count; but it is doubtful whether those words, as there used, are not totally unmeaning. But it is quite unnecessary to reason or cite authorities on this question, inasmuch as each count, under the practice before the code, would have been held good after verdict. This objection comes up like a motion in arrest of judgment under the former practice. On such motion the verdict was deemed to cure, or supply the defects or imperfections in the statement of the case. (*Bayard* v. *Malcolm,* 2 *John.*

550, 571. *Owens* v. *Morehouse*, 1 *id.* 276. *Leffingwell* v. *White*, 1 *John. Cas.* 99. *Carpenter* v. *Brown*, 6 *Barb.* 147.) In the last case cited, it was held that the omission to allege a time and place is not an available objection to the declaration, in arrest of judgment or on general demurrer. In *Addington* v. *Allen*, (11 *Wend.* 374,) it was decided in the court of errors on motion in arrest of judgment, " that the facts which will after verdict be presumed to have been proved, are those which though entirely omitted to be stated in the declaration, are so connected with the facts alleged that the facts alleged cannot be proved without proving those omitted." This decision covers the case under consideration. A readiness and willingness to perform is averred, and could not be proved, so as to authorize a verdict for the plaintiffs, without also proving a readiness and willingness so to do *at the place.* Each count is based on a valid agreement as the same is set forth in the pleading; and a breach by the defendants is well stated; there is also an averment of performance by the plaintiffs, but it is imperfectly alleged in the particular specified. This statement makes just the case which a verdict is deemed to cure. (*Code,* § 176.)

Again, by section 176 of the code it is provided that " the court shall in every stage of the action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

There is some difficulty in applying the facts of this case to either count of the complaint. They best apply to the second and fourth counts. The second count sets up the original agreement, and an extension of the time of its performance one week; and the fourth count sets up an original contract to deliver on the 1st day of October. It is therefore but a question of variance between the facts found, or proof, and the complaint. Nor can it be pretended that the variance has actually misled the defendants to their prejudice, in maintaining their defense on the merits. (*Code,* § 169.) In *Fay* v. *Grimsteed,* (10 *Barb.* 321,) it was held that a variance between the pleadings and the proof, sufficient to defeat the action or destroy

Clark *v.* Dales.

the defense, must leave the case unproved in its entire scope and meaning. The questions at issue on the pleadings among others were, as to the extension of performance of the original contract, and also as to the defendants' duty to deliver on the 1st of October. The defendants were, by the pleadings, apprised of the plaintiffs' purpose to introduce evidence on those questions, and hence had the opportunity to make preparation for a full defense on the merits to the case as proved on the trial. The variance, therefore, cannot be deemed to affect the substantial rights of the parties.

Notwithstanding the variance between the pleading and the proof is deemed immaterial, an amendment of the complaint is considered admissible and appropriate, for the purpose of securing certainty and harmony in the record. Section 173 of the code contemplates a case like the present. It provides for an amendment of pleadings, as well after as before judgment, by inserting allegations material to the case, or "*by conforming the pleading or proceeding to the facts proved,* when the amendment does not change substantially the claim or defense." (*Bate* v. *Graham,* 1 *Kernan,* 237.) Whether the amendment should be ordered at general term and without formal notice of motion for that purpose, or on notice as a special motion, is a question of practice, not entirely settled. In *Gunter* v. *Catlin,* (11 *Leg. Obs.* 209,) Duer, J., remarked, "We have now indeed a large discretion in amending pleadings, so as to conform them to the facts of the case as disclosed by the evidence, and we have not unfrequently exercised this power at a general term, even where no motion to amend had been made upon the trial;" by which it may be understood—although it does not necessarily follow from the language—that a formal notice of motion was not required. But see *De Peyster* v. *Wheeler,* (1 *Sandf.* 719, 720.)

In a case like the present, where the amendment is only to conform the pleading to the facts specifically found by the court, and where the record furnishes the only grounds for and against the amendment, a motion is quite unnecessary.

The judgment must be affirmed, with costs, with liberty to

the plaintiffs to amend the complaint. The amended count should set out the original contract as in the first count, and should aver an extension of the time of performance for a reasonable time, to wit, to and until the 1st day of October, 1853, and a readiness and willingness to receive and pay on that day by the plaintiffs, at the boat, at Jordan.

[SCHENECTADY GENERAL TERM, May 7, 1855. *Bockes, C. L. Allen* and *James,* Justices.]