THOMSON-HOUSTON ELECTRIC COMPANY of New York, Appel-
lant, *v.* THE DURANT LAND IMPROVEMENT COMPANY,
Respondent.

*It seems*, where a building erected for business purposes is rented as a
whole and without any reference to a use by way of sub-letting, or that
is not the primary purpose contemplated, the damages for breach of a
covenant on the part of the lessor to repair is, as a general rule, the
difference in the rental value of the premises as they are and as they
would have been had the covenant been performed.

A tenant is not bound to make permanent and important repairs which
the landlord has contracted to make, but may recover his damages.

A lease of a large seven-story building in the city of New York, made in
January, 1888, for a term beginning the first of May, contained cove-
nants on the part of the lessor to the effect that it would deliver the
demised property on the first day of the term "in a sound and substan-
tial condition, and in a state of good repair; that all alterations, improve-
ments and additions  *  *  *  which shall be required during the term  .
*  *  *  by any present or future law, ordinance or authority what-
soever," shall be made at the expense of the lessor; the covenant, how-
ever, to include only such alterations, etc., as are of a permanent nature,
and not such as are rendered necessary by the uses to which the prop-
erty shall be put.   Such repairs and re-building to be made as soon as
possible, the rent to be abated and suspended in similar manner and
proportion as provided in case of damage by fire.   The provision
referred to was that in case of such damage by fire as requires the
*lessor to repair or re-build, during the time the lessee shall be deprived*
of the use of the premises, the rent "or such part thereof as shall be
justly proportionate to the portion or portions of said demised premises,"
of the use of which the lessee shall be deprived "by reason of such
damage or re-building, shall be suspended or abated."   By the lease the
lessee was permitted to and did enter upon the premises before the
beginning of the term, laid the foundation for and put in an engine,
machinery, etc., expending a large sum therefor.   The lessor commenced
making some repairs, but they were not completed when the term began,
and the premises were not then in good condition or repair.   In March
the lessor applied to the building department of the city for leave to make
repairs.   The inspector and surveyors reported that the building was
unsafe and that it was necessary to take down and re-build one of its
walls or build buttresses to sustain it.   On trial of the issue before a jury
as provided by the New York Consolidation Act (Chap. 410, Laws of
1882), as amended in 1887 (Chap. 566, Laws of 1887), a verdict was rendered
May seventh which found that the building was unsafe and dangerous,
recommended that the wall be taken down above the first story, and

required the superintendent to make the specified repairs; they were not made, however, either by him or the lessor, nor did the latter make certain alterations specified in the lease and covenanted to be made by it. The lessee entered but refused to pay the rent, and in consequence various summary proceedings were commenced by the lessor. In an action brought to restrain the prosecution of such proceedings and to determine the amount of damages the lessee was entitled to, it appeared that plaintiff only occupied the first and second stories, which it had strengthened by supports, and that the upper stories were unsafe and their occupation dangerous. *Held,* that the taking and retaining possession of the demised premises by the lessee was not inconsistent with a remedy on the covenant to repair, and was not a waiver of its right to claim damages for a breach; that the facts disclosed that plaintiff was deprived of the beneficial use of the upper stories; that in suffering them to remain in an unsafe condition the covenant on the part of the lessor had been violated, and plaintiff was entitled to its legal damages; that the measure of damages was to be determined in the manner specified in the lease, *i. e.,* by deducting from the rent reserved, which was to be assumed to be the rental value of the whole premises, the proportionate rental value of the portion thereof, of the use of which plaintiff had been deprived by defendant's failure to perform its covenants.

The lease contained an agreement on the part of the lessee to pay rent for such portion of the building as he should occupy before the commencement of the term, at a rate specified per square foot. Plaintiff claimed to recover as damages the rental value at a price per square foot for the space of the use of which he was deprived, and failed to give evidence of loss, founded on the true measure of damages. *Held,* that plaintiff was at least entitled to nominal damages, and while the right to such damages, where it has beeen improperly denied, may not require the reversal of a judgment where it appears that upon a new trial only such damages could be recovered, yet, as substantial damages had been sustained by plaintiff, the denial of nominal damages was error requiring a reversal.

*T.-H. Elec. Co.* v. *Durant Land Imp. Co.* (4 Misc. Rep. 207), reversed.

(Argued October 30, 1894; decided November 27, 1894.)

Appeal from judgment of the General Term of the Court of Common Pleas for the City and County of New York, entered upon an order made the first Monday of June, 1893, which affirmed a judgment in favor of defendant entered upon the report of a referee.

The action was brought by an electric light company as lessee, to enjoin the defendant, the landlord, from ejecting it

from the premises, Nos. 421 431, on 24th and 25th streets in the city of New York, and for damages sustained from a breach of covenants on the part of the lessor. The parties represent the original parties to the lease, and to the agreement for a lease, which agreement was dated November 15, 1877. The leased premises consist of a seven-storied brick building, two hundred feet long, seventy feet high and ninety feet in width on the two streets mentioned, and which, prior to the making of the agreement for the lease, had been used for a sugar refinery. By the agreement of November 15, 1887, the defendant agreed to lease the premises to the plaintiff for the term of thirty-three years from May 1, 1888, together with certain machinery therein, at and for the annual rent of $14,500, the lessee to pay in addition certain taxes, and also the cost of insurance beyond a specified rate. It set forth the terms of the contemplated lease, and provided that the lease should be executed and delivered December 15, 1887, which time was extended to January 4, 1888, on which day the lease was executed. It was contemplated that the lessee might desire to enter upon the premises before the commencement of the term to excavate for the foundation of a large engine to be placed thereon for its business of an electric light and power company, and to place the same, and for other purposes, and the agreement provided that for such portion of the premises as the lessee might desire to occupy prior to May 1, 1888, the lessee should pay a rental at the rate of twelve and one-half cents per annum for every square foot of floor space so occupied. In pursuance of this agreement the plaintiff entered upon the cellar and first floor of the premises in December, 1887, and before the commencement of the term, May 1, 1888, it had expended a large sum in preparing the foundations for its engine and machinery, and placing therein a large engine for its business, and in making other necessary changes. The lease contained numerous covenants, both on the part of the lessor and lessee. The lessor, among other things, covenanted to deliver the demised property to the lessee on the first day of the term, "in a sound and substantial

condition, and in a state of good repair." It commenced making repairs, but they were not completed on May 1, 1888, and the lessor remained in possession of some of the upper floors of the building up to August 1, 1888, and then left the premises, and since that date the lessor has not interfered with the possession of the lessee. In March, 1888, the lessor applied to the building department of the city of New York, under the statute, for permission to make repairs on the building. This was followed by an inspection of the building by an inspector, a report by him that the building was unsafe, a survey and a report by the surveyors, dated April 19, 1888, that the building was unsafe and dangerous, specifying the repairs required, including the taking down of the east wall or the building of buttresses to sustain it, the trial of an issue before a jury in the Court of Common Pleas of the city and county of New York, wherein it was found that the building was unsafe and dangerous in its existing condition and required for its safety that buttresses should be built to support the east wall, as specified in the report of the surveyor, and the jury recommended that the front wall on 24th street be taken down above the first story, excepting the two end piers, as described in the report. The verdict of the jury was rendered May 7, 1888, and a precept in accordance therewith was issued June 13, 1888, requiring the superintendent of buildings to make the repairs specified in the verdict, but for some reason, for which no explanation is given, the precept has never been executed. The various proceedings recited were taken pursuant to tit. 5 of chap. 11 of the Consolidation Act of 1882, as amended by chap. 566 of the Laws of 1887. In addition to the general covenant above referred to, the lessor covenanted " that all alterations, improvements, re-building and additions of and to the said property, which shall be required during the term hereby granted, by any present or future law, ordinance or authority whatsoever, shall be made or procured to be made by the parties of the first part (lessor) at their own proper cost and expense, provided, however, such alterations, improvements, re-building and additions as are

hereinabove covenanted to be made by the parties of the first part, shall be such as are of a permanent nature and become a part of the freehold, and shall not be such as are rendered necessary by reason of the uses to which the said property is or shall be put."

The lessor reserved a right of re-entry to make such repairs as it was required to make, and following this reservation is the clause: "It being mutually understood and agreed, however, that the parties of the first part, their heirs, executors, administrators or assigns, shall be responsible for the making of said repairs and re-building, and for the making of the same as soon as practicable, only upon said property as it exists at the time of this letting, the rent hereinbefore reserved to be abated and suspended in the cases hereinbefore specified, in similar manner and proportions as it is hereinafter agreed such rent shall abate and be suspended in case of damage by fire." The provisions defining the obligations of the respective parties in case of damage by fire, declare that if damage is so caused as will cause a liability to repair or re-build to accrue to the lessor, he will at his own cost and expense, as soon as practicable, put the buildings in a state of repair equal to that in which they were before said damage was done. The provision for such suspension or apportionment of the rent in case of damage by fire is as follows : " And during the time the party of the second part, its successors or assigns, are deprived of the use and possession of the premises hereby demised by reason of such damage and re-building by the parties of the first part, the rent heretofore reserved, or such part thereof as shall be justly proportionate to the portion or portions of the said demised premises, of the use of which the said party of the second part, its successors or assigns, shall be deprived by reason of such damage or re-building or by reason of the possession or control of the said premises by the said parties of the first part, shall be suspended or abated." The lessor has never repaired the building to conform to the requirements in the building department proceedings, nor has he done anything to remedy the defects therein defined. Evi-

dence was given on the trial as to the safety of the building at and since these proceedings were taken, and it was shown by the great preponderance of evidence that at least the four upper floors were unsafe, and unfit to be occupied for any business purpose by reason of the insecurity of the walls of the building. They have never been occupied in fact by the lessee for any purpose.

The lease also contained a covenant by the lessor to put in and build two staircases on the 24th street side of the premises, and one staircase on the 25th street side, and to alter the location of the Otis elevator, and the size of the freight elevator " at any time after the date of the lease and upon thirty days' notice in writing " from the lessee. Notice to perform this covenant was given by the lessee to the lessor 30 days prior to May 1, 1888. The lessor took out the existing stairway on the 25th street side of the building in June, 1888, leaving a staircase on the 24th street side as the only means of access to the building, and proceeded no further. This covenant has never been in any respect performed. Subsequent to the entry of the lessee under the lease, disputes arose between the parties, based upon the violation by the defendant of its covenants. The plaintiff neglected and refused to pay the rent, and the defendant commenced summary proceedings in a District Court of the city of New York, under the statute to dispossess the plaintiff for non-payment. The plaintiff sought to set up in these proceedings his claim for damages for breach of the covenants by the lessor as a defense, and succeeded in that court, but the judgment was reversed on appeal on the ground that such damages could not be considered in those proceedings. Several proceedings of this character were instituted by the defendant, and more were threatened. Thereupon this action was brought by the plaintiff.

The complaint sets forth a breach by the defendant of the covenants herein specially referred to and of others, and demanded damages therefor, and that an injunction issue restraining further proceedings to eject the plaintiff. The defendant in his answer denied the breaches alleged and set

up a claim for rent. The referee, to whom the action was referred, found that the plaintiff was entitled to certain allowances for damages on certain covenants of the lessor, which should be deducted from the rent, taxes, etc. He refused to allow any damages on the covenant to make the alterations required "by any present or future law, ordinance or authority whatsoever;" and he also refused to allow any damages for any breach of the covenant to build staircases, etc. He directed judgment in favor of the defendant for the sum of $70,967.05. The judgment entered upon the report was affirmed by the General Term, and the plaintiff thereupon appealed to this court.

Further facts are stated in the opinion.

*William B. Putney* and *Henry B. Twombly* for appellant. The building in question was unsafe and untenantable, and the referee erred in refusing to make any finding as to the safety of the building, and as to the condition of the walls thereof. (Code Civ. Pro. §§ 993, 1023; *Tallman* v. *Murphy*, 120 N. Y. 345; *Kip* v. *Merwin*, 52 id. 542; *Parker* v. *Meadows*, 86 Tenn. 181; *Hexter* v. *Knox*, 63 N. Y. 861; *Martin* v. *Hill*, 42 Ala. 275; *Hinckley* v. *Beckwith*, 13 Wis. 31; *Surplice* v. *Farnsworth*, 7 M. & G. 576; *Kramer* v. *Cook*, 7 Gray, 550; *Leavitt* v. *Fletcher*, 10 All. 119, 121; *Keating* v. *Springer*, 146 Ill. 481; *Collins* v. *Lewis*, 19 Law. Rep. Ann. 822; *Goebel* v. *Hough*, 26 Minn. 252; *Young* v. *Burhaus*, 50 N. W. Rep. 343; *Wright* v. *Lattin*, 38 Ill. 293; Suth. on Dam. § 848; Wood on Landl. & Ten. 369; *Dyett* v. *Pendleton*, 8 Cow. 727; *Lansing* v. *Van Alstyne*, 2 Wend. 561; *Blair* v. *Claxton*, 18 N. Y. 529; *Mayor* v. *Mabie*, 13 id. 151; *Townsend* v. *N. W. Co.*, 117 Mass. 501.) The plaintiff was entitled to an apportionment of the rent, and also to damages, under the clause of the lease providing that re-building and alterations should be made by the landlord where required by any authority, the re-building and alterations being of a permanent nature, and the referee erred in finding that the plaintiff was entitled to no apportionment of the rent nor damages. (*Spreckels* v. *Sax*, 1 E. D. Smith, 253;

*Royce* v. *Guggenheimer*, 106 Mass. 201, 202; *Surplice* v. *Farnsworth*, 7 M. & G. 576; *Hexter* v. *Knox*, 63 N. Y. 561; *Tallman* v. *Murphy*, 120 id. 345.) The referee erred in refusing to find that the breach of the covenant by the defendant to build three staircases and repair the elevators, etc., in the building, deprived the plaintiff of the beneficial use and enjoyment of a portion of the premises. (*Hinckley* v. *Beckwith*, 13 Wis. 31; Suth. on Dam. § 873; *Hexter* v. *Knox*, 63 N. Y. 567.) The rule as to damages adopted by the referee was erroneous. (*Stewart* v. *L. H. Co.*, 75 Ga. 582; *Myers* v. *Burns*, 35 N. Y. 269; *Hexter* v. *Knox*, 63 id. 561; *Taylor* v. *Bradley*, 39 id. 129, 142; *Dean* v. *Roesler*, 1 Hilt. 420; *Clenigan* v. *McFarland*, 34 N. Y. S. R. 624; *Stewart* v. *L. H. Co.*, 75 Ga. 582; *Jaques* v. *Millar*, L. R. [6 Ch. Div.] 153; *Crocker* v. *Hill*, 61 N. H. 345; Taylor on Landl. & Ten. § 330.) The referee erred in refusing to find that in and by the terms and intendment of the lease, the lessors also covenanted that the property and machinery in question should be suitable and sufficient for manufacturing purposes, and that the lease in question was made with reference to the fact, and it was in the contemplation of the parties thereto that the space in the building was to be rented with power for manufacturing purposes to be supplied by the tenant. (*Hexter* v. *Knox*, 63 N. Y. 561; *Hinckley* v. *Beckwith*, 13 Wis. 31.) The referee erred in rejecting as evidence the original application to repair made by the Durants, the report of the inspector and the survey, and the proceedings for condemnation ending in a verdict of the jury declaring the building unsafe, and the precept issued thereunder. (*Tallman* v. *Murphy*, 120 N. Y. 345; *E. Ins. Co.* v. *Swift*, 12 Minn. 437; *Richmond* v. *Richmond*, 78 N. Y. 354; *Woodruff* v. *Taylor*, 20 Vt. 65.)

*Esek Cowen* and *Charles J. Hardy* for respondent. The referee correctly decided that, under the evidence in this case, the question whether or not the walls of the building were actually out of repair, within the defendant's covenant in the lease, was immaterial. It was not necessary for the referee to

decide a strongly-contested question of fact unless his decision had some legitimate bearing upon the result. If the walls were out of repair on May 1, 1888, their condition could not have affected the result of this case, because there was no evidence showing that the plaintiff had suffered any damage by reason of such walls being out of condition. (*Coward* v. *Gregory*, L. R. [2 C. P.] 153; *N. Y. M. M. P. Co.* v. *Remington*, 109 N. Y. 143; *Dodds* v. *Hakes*, 114 id. 265; *Cassidy* v. *Lefevre*, 45 id. 362; *Blanchard* v. *Ely*, 21 Wend. 342; *Griffin* v. *Colver*, 16 N. Y. 489; *Howard* v. *B. M. Co.*, 139 U. S. 199.) The referee was right in holding that all the evidence given by the plaintiff as to damages from the neglect to repair the walls of the building was given upon a misconception of the true rule of damages. The damages to which the plaintiff was entitled, if to any, were what it would cost it to put the premises in the condition called for by the lease. (*Dorwin* v. *Potter*, 5 Den. 306; *Sparks* v. *Bassett*, 17 J. & S. 270; *O'Connor* v. *Goureaud*, 3 N. Y. S. R. 555; *Brooklyn* v. *R. R. Co.*, 47 N. Y. 482.) The referee properly rejected the evidence offered of the proceedings against the defendant by the building department of the city of New York. The plaintiff was in no sense a party to that action, and as the judgment (if there was one) could not have been evidence against the plaintiff, it is not evidence for him. (*Greenleaf* v. *R. R. Co.*, 141 N. Y. 395.) The referee properly decided that the fact that the building had been condemned by the New York building department as unsafe, and that certain repairs and alterations had been directed to be made, was immaterial, and that, under the evidence in this case, no damages could be allowed the plaintiff for non-compliance by the defendant with such orders of the department. (*Ames* v. *Belden*, 17 Barb. 513; *Hyland* v. *Paul*, 33 id. 241; *Young* v. *Leary*, 135 N. Y. 577.)

ANDREWS, Ch. J. The principal question of fact litigated on the trial related to the condition of the walls of the building on the demised premises. A large mass of evidence was

taken of architects, builders and other persons, and it tended
to establish, by the great preponderance of proof, that the
walls were unsafe, and rendered the upper stories of the build-
ing unfit for occupation for any business purpose. The build-
ing was condemned as wholly unsafe by the building depart-
ment of the city of New York prior to May 1, 1888. The
defendant contested the decision, and issues were tried before
a jury, under the provisions of chap. 410 of the Consolidation
Act of 1882, as amended by chap. 566 of the Laws of 1887,
and the jury, on the 7th day of May, 1888, found that the
building was unsafe in its then condition, and that buttresses
should be built to support the east wall, and that the front
wall on 24th street should be taken down above the first story,
with the exception of the two end piers. The referee, how-
ever, refused to make any finding or adjudication upon the
question of the soundness or unsoundness, safety or unsafety
of the walls of the building, for the reason assigned in his
report, viz.: " That an adjudication on this question was imma-
terial, because of the fact that the plaintiff has used and
occupied the building for its business, and has had an undis-
turbed right to the beneficial use of the remaining part of the
building (*i. e.*, the part not actually used) under the lease, up
to the date of the report." It is apparent, from the report of
the referee, that if he had deemed a finding on the subject
material he would have found that the walls were unsafe, and
that the occupation of the upper stories of the building for
purposes of business would have been dangerous. This was
a vital and material question in the case, and the refusal of the
referee to pass upon it was manifest error. The reason
assigned by the referee for refusing to make a finding in regard
thereto was based upon a misconception of the action, and of
the character and scope of the covenants in the lease. The
covenant on the part of the lessee to pay the rent and charges
specified in the lease, and on the part of the lessor to deliver
the demised premises to the lessee at the commencement
of the lease in " a sound and substantial condition, and in
a state of good repair," and also to make, as soon as

practicable, all changes and alterations "required at any time during the term by any present or future law, ordinance or authority whatsoever," were distinct and independent covenants. The plaintiff, having entered upon the demised premises under the lease, and continued in possession, was bound to pay the rent reserved, and he could not defend on the ground that the covenant on the part of the lessor to put the premises in repair, or to make changes or alterations required by municipal or other legal authority, had not been performed. On the other hand, the lessor, when sued on his covenants, could not allege in bar of the action, that the lessee had remained in possession of the premises. But either one in an action brought against him by the other, could counterclaim any demand arising under the lease against the plaintiff in the action. The tenant, in a suit for the rent, could recoup any damages for a breach of the covenants to repair, and the landlord, if sued by the tenant for a breach of the covenants on his part, could counterclaim the rent reserved by the lease. The matter set up in the answer in either of the supposed cases would arise out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim. (Code, § 501; *Cook* v. *Soule*, 56 N. Y. 420.) The taking and retaining of the demised premises by the lessee is not inconsistent with a remedy on the covenants to repair made by the landlord, and would not be a waiver of the tenant's right to claim damages for a breach. The lessee is not bound to give up his lease to avail himself of the landlord's covenants, and a rule that remaining in possession would constitute a bar to his action would defeat one of the very purposes of the rule that covenants of this character are separate and independent. Such a case is not to be confounded with one where an eviction is relied upon as a defense to an action for rent. When an eviction is pleaded in such an action an abandonment or surrender of the possession must be shown, because the general rule is that there can be no eviction, actual or constructive, without abandonment of possession. (*Boreel* v. *Lawton*, 90 N. Y. 293.) If, therefore, the condition of the

walls deprived the plaintiff of the beneficial use of the upper stories of the building, and if suffering them to remain in an unsafe condition was a violation by the lessor of any covenant in the lease, he was entitled not only to a finding that the walls were unsafe, but also to any legal damage shown to have resulted to him from such violation. Upon the first branch of this inquiry there can be no reasonable doubt. The plaintiff has not occupied up to this time the upper stories of the building. His actual occupation has been restricted to the first and second stories. The evidence tends to show that the use of the upper stories by himself or by sub-tenants would be·dangerous. It would be an act of temerity for the plaintiff to use them for business purposes, and to sub-let them to tenants in the existing condition would be inexcusable, if not criminal negligence. The use of the lower floors is rendered comparatively safe, as the engines and machinery are placed upon independent foundations, specially constructed, and supports were put in by the plaintiff which tended to strengthen the portions of the building occupied by it. The other branch of the inquiry requires a reference to the lease to ascertain whether the defendant entered into any contract which bound him to make the necessary changes and reparations to make the walls secure. There is as little doubt on this branch of the inquiry as upon the other. Leaving out of view the general covenant to surrender to the plaintiff at the commencement of the term "in a sound and substantial condition and in a state of good repair," the special covenant of the lessor to make all changes which might be required at any time during the term "by any present or future law, ordinance or authority whatever," plainly covers the case. It is not denied that the proceedings of the building department of the city of New York, which terminated in the verdict of the jury, were regularly conducted and bound the defendant. The improvements and alterations specified in the verdict and required to be made were of a permanent nature and when made would become a part of the freehold, and to make them required a large expenditure. This was the situation contemplated by the

covenant. It became the duty of the defendant, as between him and the plaintiff, to make the improvements and alterations so directed to be made, and this obligation he wholly failed to discharge. If he had performed his covenant the whole building would have been rendered safe and fit for occupation. The breach of this covenant was clearly established, and the plaintiff was entitled to recover the damages shown to have resulted therefrom.

The referee awarded neither substantial nor nominal damages. It is claimed on behalf of the defendant that no proof was given based upon the true measure of damages, and that in the absence of such proof, the refusal of the referee to find a breach of the covenant, or that the building was unsafe, was not reversible error, as no legal harm resulted from such refusal. The plaintiff, as the evidence tends to show, by reason of the failure of the defendant to render the building safe, was deprived of the beneficial use of the upper stories. What the true rule of damages in such case would be, independently of the contract, has been the subject of much comment by counsel. The plaintiff sought to recover the rental value of the space which he could not use by reason of the unsafe condition of the building, at a price per square foot, and gave evidence tending to show that the several floors could have been rented upon that basis for a sum which in the aggregate was considerably more than the entire rent reserved in the lease. In support of this basis for damages, reference is made to the fact that, in the agreement for a lease, it was provided that, for the portions of the building which the plaintiff might occupy before the commencement of the term, he should pay rent at a certain rate per square foot for the space occupied. The referee also adopted this method for ascertaining the allowance made by him to the plaintiff for the time from May 1, 1888, during which the defendant was engaged in making repairs. The defendant's counsel insists that the true rule of damages was either the cost of repairing the walls, or the difference between the rental value of the premises as they were and the rental value as they would have been if the covenant had been complied with.

We are inclined to the opinion that when a building erected for business purposes is rented as a whole and without any specific reference to a use by way of sub-letting, or where that is not the primary purpose contemplated by the parties, the damages for the breach of a covenant to repair is the difference in the rental value of the premises as they are and as they were to be, regarding the premises as a whole, and that they are not to be measured by supposed loss, by reason of the tenant being unable to parcel out separate portions and let them to under-tenants. Such a rule of damages would lead to great uncertainty and subject the lessor to liability based on contracts with third persons, of which ordinarily he could know nothing. Loss of profits upon the very contract sued upon, if definite and certain, may be recovered (*Masterton* v. *Mayor, etc.*, 7 Hill, 61), or where a contract is made in view of an already existing contract with a third person, and the contract sued upon is made with special reference to such contract and to enable the party to carry it out, then the loss sustained, or the profits which might have been realized on such contract with a third person, may be a proper subject for consideration. (*Messmore* v. *N. Y. Shot & Lead Co.*, 40 N. Y. 422.) But in the ordinary case of a lease of a building to be used for any purpose at the discretion of the lessee, and there has been a breach by the lessor of a covenant to repair, the rule which measures the damages by the difference in general rental value, is usually compensatory, and, in most cases, best satisfies the demand of justice. If in all cases it does not afford full compensation, it eliminates an element of speculation and uncertainty which, if permitted to be considered, would often lead to great injustice. The cases of *Myers* v. *Burns* (35 N. Y. 269), and *Hexter* v. *Knox* (63 Id. 561) were cases of leases for hotel purposes, and for a breach by the landlord of a covenant to repair the tenant was allowed to recover the value of the use of certain rooms in the hotel for hotel purposes during the time they were rendered untenantable because of the failure to perform the covenant. These cases fall within a well-defined class, which permits a recovery on a breach of

contract of damages which it may be found were contemplated by the parties when the contract was made, as a consequence of the breach of the covenant. The claim that the cost of repairing the walls is the measure of damages cannot be sustained. If the tenant had elected to repair the walls it is possible that he could have charged the necessary expense to the landlord, or recouped the amount in an action brought for the rent. But a tenant is not bound to make permanent and important repairs, which the landlord was to make, but may seek his remedy by action to recover the damages or by counterclaim. (*Cook* v. *Soule,* 56 N. Y. 420; *Hexter* v. *King, supra.*)

But we are of opinion that in this case the parties have, by their contract, fixed the rule of damages for a breach by the defendant of his covenant to make alterations required at any time during the term by municipal or other public authority. *Modus et conventio vincunt legem.* The lessor reserved a right of re-entry to make "such repairs as shall be necessary to be made by them," and covenanted to make them as soon as practicable, and the lease provided that meanwhile the "rent hereinbefore reserved to be abated and suspended, etc., in similar manner and proportion as it is hereinafter agreed such rent shall abate and be suspended in case of damage by fire." The provision in respect to damage by fire declares that the "rent hereinbefore reserved, or such part thereof as shall be justly proportionate to the portion or portions of the said demised premises, of the use of which the said party of the second part (lessee), etc., shall be deprived by reason of such damage, etc., shall be suspended and abated," etc. The parties have declared, in substance, that in the case now presented the rent shall be apportioned as between the part occupied and the part not tenantable. The measure of damages would, under the agreement, be determined by assuming, in the first place, that the rent reserved is the annual rental value of the whole premises, and by then ascertaining the proportionate value of the portion of the building of which the plaintiff has been

deprived of the beneficial use by the failure of the defendant to perform its covenant.

The plaintiff failed to give evidence of loss founded upon the true measure of damages. But, in any event, having established the breach of the covenant, he was entitled to nominal damages, and even these were not awarded. The referee erred in the rule of law adopted by him, in a very material respect, which rendered the question of nominal or substantial damages unimportant. The right to nominal damages, where the right thereto has been improperly denied, may not require a reversal of a judgment when it appears that on a new trial only nominal damages could be recovered. If the refusal to award them did not influence the question of costs, and the judgment would not constitute an estoppel in respect to other interests, the party whose strict right was denied might not be deemed aggrieved, and the judgment would not, perhaps, be reversed merely to vindicate a barren right. But it would be a perversion of justice to deny a new trial in a case like the present, where the court can see that substantial damages have been suffered, but the party mistook the basis on which they should be ascertained. In such case denial of the right to nominal damages, to which in any event the party was entitled, is error for which the judgment should be reversed. (See *Brantingham* v. *Fay*, 1 Jo. Cas. 256; *Leeds* v. *Metropolitan Gas Light Co.*, 90 N. Y. 26.)

Other questions were argued at the bar, but, in view of the conclusion that there should be a new trial, they need not be considered.

The judgment should be reversed and a new trial ordered.

All concur.

Judgment reversed.