(93 Misc. Rep. 548)

### HUTTON et al. v. TULLIS.

(Supreme Court, Appellate Term, First Department. February 1, 1916.)

1. DAMAGES ⬥12—NOMINAL DAMAGES.

In an action for failure to deliver corporate stock sold, it was error to dismiss the complaint solely for lack of proof of damage, as nominal damages should have been awarded.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 31; Dec. Dig. ⬥12.]

2. APPEAL AND ERROR ⬥1175—DISPOSITION—JUDGMENT FOR NOMINAL DAMAGES.

In an action for failure to deliver corporate stock sold, where it is clear that plaintiffs can only recover nominal damages, but the trial court dismisses the complaint for lack of proof of damage, the appellate court is justified in accepting a stipulation by defendant's counsel to waive costs and disbursements and entering a judgment for nominal damages, thus precluding the plaintiff from a retrial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. ⬥1175.]

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. CORPORATIONS ⬤121—STOCK—REMEDIES OF BUYER—FAILURE TO DELIVER —DAMAGES.

In the absence of communications between the buyers and seller of corporate stock as to an extension of the time for delivery, the measure of the buyers' damages for the seller's failure to deliver is the difference between the contract price and the market price at the time and place of delivery.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 504, 505; Dec. Dig. ⬤121.]

4. CORPORATIONS ⬤121—STOCK—SALES—EXTENSION OF DELIVERY—QUESTION FOR JURY.

In an action by the buyers of corporate stock for the seller's failure to deliver, questions whether the buyers, at the request of the seller, forbore to buy for his account in the market, thereby establishing a new delivery date, and what such delivery date was, *held* for the jury under the evidence.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 504, 505; Dec. Dig. ⬤121.]

5. CORPORATIONS ⬤121—STOCK—REMEDIES OF BUYER—FAILURE TO DELIVER—DAMAGES—POSTPONEMENT OF DELIVERY.

Where the buyers of corporate stock, at the request of the seller, upon his failure to deliver as originally agreed, forbore to buy in the market for his account, thus postponing the date of delivery, the buyers' damages, in their action for the seller's failure to deliver, were assessable according to the market price of the stock at the postponed delivery date.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 504, 505; Dec. Dig. ⬤121.]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by William E. Hutton and others against Raymond Tullis. From a judgment dismissing the complaint, plaintiffs appeal. Judgment reversed, and new trial ordered.

Argued November term, 1915, before LEHMAN, BIJUR, and FINCH, JJ.

Hart & Tompkins, of New York City (Millard F. Tompkins, of New York City, of counsel), for appellants.

Clifford Seasongood, of New York City (Thomas A. Eager, of New York City, of counsel), for respondent.

FINCH, J. This is an action by a firm of stockbrokers to recover damages for defendant's breach of contract in failing to deliver, in accordance with the contract of sale, 50 shares of Indian Refining Company preferred stock.

[1] Three contentions were advanced in the court below by the defendant: (1) That the contract of sale was conditioned upon an event that did not happen; (2) that it was unenforceable on account of the statute of frauds; (3) that there was no proof of damage. The court below in a careful opinion held against the defendant on the first two contentions, but dismissed the complaint on the third ground, namely, that there was no proof of damage. Even if there was no proof of damage, it was error to dismiss the complaint on that ground, as nominal damages should have been awarded. Thomson H. E. Co.

v. Durant L. I. Co., 144 N. Y. 34, at page 49, 39 N. E. 7. To remedy this error defendant respondent states that he has filed a stipulation waiving all costs and disbursements.

[2] Whether the plaintiffs can succeed in recovering substantial damages on a new trial is uncertain. If it were clear that the plaintiffs could only recover nominal damages, this court would be justified in accepting the stipulation of defendant's counsel to waive costs and disbursements and enter a judgment for nominal damages, and thus preclude the plaintiffs from having a retrial. Thomson H. E. Co. v. Durant L. I. Co., supra; Stevens v. Amsinck, 149 App. Div. 220, 133 N. Y. Supp. 815; Roystone v. Woodbury Institute, 67 Misc. Rep. 265, 122 N. Y. Supp. 444.

Upon a new trial the question as to what date shall be considered the delivery date will have to be determined, and so should be considered here. The contract was oral, and was made on November 12, 1913, calling for the delivery within "a day or two" of 50 shares of Indian Refining Company's preferred stock at $34 a share. On November 13th the plaintiffs contracted to sell the stock purchased of the defendant to a customer at $35 a share, and on November 14, 1913, the defendant having failed to deliver, signed the following:

"W. E. Hutton & Company, 25 Broad Street.

"New York, November 14, 1913.

"To Raymond Tullis. You failed to deliver to-day 50 shares of Ind. Ref. Pfd at $34. Please confirm. [Signed] R. Tullis."

The following are extracts from the record in regard to the communications that passed between the plaintiffs and the defendant in reference to the delivery date:

"Q. You [plaintiffs' representative] called him [defendant] up the next day? A. Within a day called him up and told him I would take the stock. He said: 'All right, I will send it around in a day or two; there may be some delay on delivery.' * * * Q. What did he say about not bringing the stock around for a day or two? A. He said he would send the stock around in a day or two; would be a little delay on delivery. I said it would be all right."

On the day after the purchase, a representative of the plaintiffs called on the defendant:

"Q. What did you say to Mr. Tullis? A. 'I am from W. E. Hutton & Co. How about the 50 Indian you sold us?' Q. What did he say? A. He answered 'I will get it in; send it over.' * * * Q. Did you [a representative of the plaintiffs] call him up? A. I called him up, I think, about week after. He said he had not got the stock in to deliver; couldn't deliver until could get the stock. * * * Q. About delivering stock—did you subsequently speak to him? A. I think, if I remember right, called him up; I don't remember how long after it was; I asked him, 'When going to deliver that stock?' He said, 'Deliver it as soon as could get it.' * * * Q. What did you say to that? A. I said, 'Hurry it along, as we need the stock,' if I remember right. I don't remember whether I used those exact words or not. * * * Q. Do you recall calling up the defendant, Mr. Tullis, in this action? A. Yes. Q. Subsequent to November 12, 1913? A. Yes, sir. Q. You had a conversation with him over the phone? A. Half a dozen different times. Q. And during what period of time did you call him up; I mean was it every week, or every two or three weeks, or twice a week? A. Well, it had been probably at intervals of a couple of days at one time, and then a week at another. Q. Will you tell me what the substance of the conversations was that you had

with him over the phone? A. They were always that Mr. Tullis would get the stock in to us in a day or two. Q. What stock? A. The Indian Refining, 50 shares of Indian preferred stock; until latterly I had told him on couple of occasions that we would have to buy them in. He had said, 'Now, you won't do anything like that.' So— * * * Q. When was the last conversation you had with? * * * A. I should say around the 1st of December. Q. He told you then not to buy them in? A. No; he did not say not to. When I told him of it, he said, 'You wouldn't do anything like that.' It is rather unusual, and through the street it is not customary. It is the very last resort when you do that sort of thing. Q. (by the Court). You mean, by buying in, getting stock to take its place? A. Yes, sir; to substitute for it. Our client in the matter was urgent with us. He was insistent upon we delivering him the stocks. * * * Q. What efforts did you [a representative of plaintiffs] make to purchase stock after the 12th day of November, purchase this stock—what year was it, 1913? A. I do not think I made any efforts to buy up any at all until I notified him, hoping he would deliver it. Q. When you say you notified him, when do you mean by that? A. When I sent him that letter, we would have to buy the stock in if he did not deliver it. * * * Q. Until the notice just referred to, the notice of December— A. 5th."

The letter referred to was as follows:

"Dec. 5, 1913.

"Mr. Raymond Tullis, 27 William Street, New York City—Dear Sir: In case of nondelivery by 1 p. m. December 8, 1913, of 50 shares of Indian Refining pfd. bought from you at 34, November 12, 1913, we will be compelled to buy 50 shares of Indian Refining pfd. in the open market, for your account, and hold you responsible for any losses that may be incurred to us."

The defendant testified in part as follows:

"Q. You spoke to the defendant, or rather the witness McCormich, on two or three occasions after that? A. During the next week, yes; I had two or three conversations. Q. What did you say to him? A. I told him I did not have the stock, and it was a question whether I would get the stock or not."

On December 30th, the plaintiffs purchased 50 shares at $44, which was 10 points above the price at which the defendant had agreed to sell.

[3, 4] In the absence of any communication between the parties as to an extension of the delivery date, the measure of plaintiffs' damage is the difference between the contract price and the market price at the time and place of delivery. Personal Property Law, § 148, added by Laws 1911, c. 571; Saxe v. Penokee L. Co., 159 N. Y. 371, 54 N. E. 14; Belden v. Nicolay, 4 E. D. Smith (Com. Pl.) 14; Oswego Falls P. & P. Co., 215 N. Y. 98, at 106, 109 N. E. 92. The plaintiffs contend, however, that the verbal communications between the parties and the letter of December 5th extended the date for delivery. It will thus become at least a question of fact (if the evidence is the same as in this record) upon a new trial, in estimating plaintiffs' damage, whether there was forbearance on the part of the plaintiffs at the request of the defendant, whereby a new delivery date was established and what was such new delivery date. Ogle v. Earl Vane, L. R. 3 Q. B. 272; Smeed v. Foord, 1 E. & E. 602; Ralli v. Rockmore (C. C.) 111 Fed. 874; Young v. Hunter, 6 N. Y. 203.

In Ogle v. Earl Vane, supra, which showed a state of facts similar to the case at bar, it was said:

"But, in consequence of a written correspondence and some personal communication, we find the plaintiff forbearing to sue, and the defendant continuing to fail to deliver the iron. It may be that on this correspondence we cannot collect that there was any new binding contract on the plaintiff to forbear for even an indefinite term, nor on the defendant to deliver the iron. * * * This is what takes place: The defendant (for what Shaw did may be taken as done by the defendant), who has broken his contract, and is then liable for the breach, writes to the plaintiff and proposes to deliver as a substitute for the iron under the contract a different kind of iron. The plaintiff proceeds to take this proposal into consideration, and ultimately it comes to nothing; the persons with whom the plaintiff had subcontract refusing, from whatever may have been the cause, to accept the substitution; and the proposal is not accepted by the plaintiff. But surely the very proposal itself implies a request, in all courtesy, as between men of business, that the plaintiff will not commence an action at once, but delay, in order to see whether a compromise cannot be effected, and surely whether there was that implied request, and subsequent delay on the part of the plaintiff, was matter for the consideration of the jury in estimating the damages the plaintiff was entitled to. But the case does not stop there: There is the letter of the 29th of December. * * * Surely, again, this communication from the defendant implied a request to the plaintiff and the other parties to forbear, and the plaintiff's waiting was an acquiescence in this request. Can it reasonably be contended that that which has been called a rule of law as to the measure of damages, but which is rather a mere rule of practice, is to prevail under all circumstances? It would be contrary to common sense and justice, when there has been a series of proposals by the defendant involving delay for his own benefit, and acquiescence on the part of the plaintiff, that because there may be no binding contract varying the terms of the former contract, the plaintiff is to be tied down to the strict letter of the rule as to the measure of damages for the nondelivery of goods, and not be entitled to the damages consequent upon the delay."

In Tyers et al. v. Rosedale & Ferryhill Iron Co., Limited, L. R. 8 Ex. 305, commenting on the case of Ogle v. Earl Vane, the court said:

"Ogle v. Earl Vane, which has been cited for the plaintiffs, has no application to the present case. There there was no new contract. The question was merely as to the amount of damages, and the plaintiff being entitled to the difference between the contract price and the market price, when he had to purchase the iron which the defendant had failed to deliver according to his contract, and having delayed the purchase in the market at the request of the defendant, and the price having risen in the meantime, the defendant was held liable according to the market price at the time when he had himself requested the plaintiff to make the purchase."

In Young v. Hunter, 6 N. Y. 203, it is said:

"The complaint then shows that the defendants, who alone had the right to insist that the trial should be made, promised the plaintiff that they would within a few days or weeks furnish him with the requisite materials to make the trial. Upon this promise he relied, and having waited in vain for the delivery of the material through the whole time stipulated for the trial (a request for their delivery not having been complied with), he was prevented from making a trial, and could not ascertain whether the improvement would be useful or profitable. By the act and neglect of the defendant, the plaintiff was prevented from determining the fact upon the determination of which he was bound to keep the right assigned to him. In this view of the case I regard it as of no importance that the promise of the defendant was without consideration. It is sufficient that the plaintiff in good faith relied upon it, and was thus by their act induced to neglect strict observance of the conditions of his contract. It does not become the defendants to allege, nor can they be permitted to allege, that their promise should not be relied upon. The

act of a party which prevents the performance of a condition in his favor is not the less effectual for being gratuitous."

Even though in the early cases the courts strictly adhered to the rule that a contract under seal could not be contradicted or varied by written evidence not under seal, yet even then the courts allowed the enlargement of the time for delivery, holding that:

"The enlargement of the time is nothing more than the waiver of strict performance. The defendants, having solicited the delay, cannot urge it as a defense." Esmonds v. Van Benschoten, 12 Barb. 366, at page 370.

The court below in a carefully written opinion cited the case of Norton v. Wales, 24 N. Y. Super. Ct. 561, as being on all fours with the case at bar, and quoted therefrom the following:

"The doctrine is well settled that an extension of the time for the performance of a contract is a new agreement between the parties, as substituted pro tanto in place of the original. Clark v. Dales, 20 Barb. 42. It is not claimed in this case that the plaintiffs ever actually agreed with the defendant to extend the time of delivery, or, in words, assented to their request for further time; and it seems to me no such agreement can be implied from the fact that the plaintiffs repeatedly asked the defendant to deliver the goods, and the latter as often refused a further delay. Nothing was said at either of these conversations which would have precluded the plaintiffs from bringing a suit for the recovery of damages immediately afterwards."

It does not seem that the court in Norton v. Wales, supra, meant to say that only by means of a new agreement could the delivery date be extended. In Clark v. Dales, 20 Barb. 42, which was relied upon by the court in Norton v. Wales, it is said:

"When a party procures delay, he shall not be allowed to urge it for his own protection."

In so far as Alabama Chemical Co. v. Geiss, 143 Ala. 591, 39 South. 255, and Hardwood Lumber Co. v. Adam & Co., 134 Ga. 821, 68 S. E. 725, 32 L. R. A. (N. S.) 192, lay down a different rule, they are not in harmony with the decisions noted above.

[5] As has been shown from the cases cited, even if there was no new agreement, yet if the plaintiffs did forbear at the request of the defendant, the damages must be assessed according to the market price at the postponed delivery date.

Judgment must be reversed, and a new trial ordered, with $30 costs to the appellant to abide the event. All concur.