GREGORY WAKULAW, Respondent, *v.* THE STATE BANK, Appellant.

First Department, December 18, 1925.

**Banks and banking — action to recover money paid to defendant November 17, 1916, for Russian rubles to be deposited in government bank at Petrograd, Russia, and bank book supplied within two months — action barred by six-year Statute of Limitations (Civ. Prac. Act, § 48) — fact that defendant orally requested defendant to wait for bank book does not estop it from pleading statute — acknowledgment or promise to toll statute must be in writing under Civil Practice Act, § 59.**

The plaintiff, who paid to the defendant on November 17, 1916, a certain sum of money for which the defendant agreed to sell Russian rubles and to deposit the same to the credit of the plaintiff in a government bank at Petrograd, Russia, and to furnish the plaintiff with the bank book showing the deposit within two months from the date of the contract, is barred by section 48 of the Civil Practice Act from maintaining an action to recover the money on the ground

that the contract was not performed, since it appears that the action was brought more than six years after the expiration of the two months.

The fact that the plaintiff from time to time demanded the bank book, and the defendant requested him to wait, did not estop the defendant from pleading the Statute of Limitations, since, under section 59 of the Civil Practice Act a promise or acknowledgment sufficient to toll the statute must be in writing.

MERRELL and MARTIN, JJ., dissent, with memorandum.

APPEAL by the defendant, The State Bank, from an order and determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 18th day of December, 1924, reversing a judgment of the Municipal Court of the City of New York, Borough of Manhattan, First District, in favor of the defendant, dismissing the complaint, with costs, and directing judgment in favor of the plaintiff in the sum of $952.75 with interest thereon and costs in the sum of $30.

*Max Silverstein* [*Frank C. Laughlin* of counsel; *Jos. W. Kirkpatrick, Max Silverstein* and *Abraham Rickman* with him on the brief], for the appellant.

*Thomas H. Mahony,* for the respondent.

BURR, J.:

The plaintiff in his complaint alleged that on November 17, 1916, he entered into an agreement with the defendant under the terms of which the plaintiff was to and did deposit with defendant, as banker, $952.75, which the defendant at the usual and customary rate for such services was to transfer to the credit of the plaintiff in a savings bank conducted by the Russian government in Russia, and to furnish the plaintiff with a bank book or deposit book on said Russian bank showing a credit to him in the amount of the deposit translated into gold rubles at the then rate of exchange amounting to 3,000 rubles, or to return to the plaintiff the said sum of $952.75; that on said date, November 17, 1916, plaintiff delivered to defendant the said sum of $952.75, and has performed all the other acts required of him under the terms of said agreement.

" *Fifth.* Upon information and belief that the defendant never sent such deposit to Russia; that subsequently and on numerous occasions the plaintiff demanded said pass book or bank book from the defendant, but the defendant failed and refused to give any such book or other instrument from any such Russian Bank showing a credit to the account of plaintiff of three thousand (3000) gold rubles; that thereupon and about December 15, 1923, the plaintiff demanded that the defendant return the said $952.75 which the defendant refused to do."

Defendant in its answer denies all the allegations of the com-

plaint except that defendant admits plaintiff purchased from defendant and defendant sold to plaintiff 3,000 rubles, for which plaintiff paid $952.75, and for a separate defense alleges that the cause of action set forth in the complaint did not accrue within six years from the commencement of the action.

At the time plaintiff paid the money to defendant he received a receipt which was offered and received in evidence and reads as follows:

| " O. L. Richard, | Arnold Kohn, | W. L. Burckett, |
| President | Vice-Pres. | 2nd Vice-Pres. |
| I. Voorhis, | John Kneisel, | R. C. Richard, |
| Cashier | Asst.-Cashier | Asst.-Cashier |

" No. 18806                                NEW YORK, *Nov.* 17, 1916.

" Received from Gregory Wakulaw the sum of Nine hundred and fifty-two 75/100 Dollars for the purchase of Three thousand (3,000) Rubles to be transmitted by mail to Petrograd, Russia, subject to conditions on the reverse of this receipt.

" $952.75        Ru 3000—        " THE STATE BANK
                                        " Per NISSEL."

It was agreed by counsel for the defendant that the conditions on the reverse of this receipt were not material to the issue.

On left margin appears the following:

" THE STATE BANK
        " 376–378 Grand Street, New York
    " Drafts and Payments on all places in Europe.  Collection of Debts, Legacies, etc., in Europe.  Deposits Received.  Interest allowed on time deposits."

Across the face of this receipt is stamped the following:

" Subject to delay on account of foreign war."

The plaintiff testified that on November 17, 1916, which was the day he entered into the agreement with the defendant and talked with Mr. Bornstein, the assistant manager of the defendant's foreign department, he was informed that he would receive the bank book or deposit book in about two months.

He testified as follows: " Q. Tell the court just what transactions you had with the State Bank or with Mr. Bornstein in November? A. I spoke to the gentleman down at the State Bank and asked how I could send money to Russia and he told me at thirty-two dollars one hundred rubles, and he wanted to send it to Russia and be put on a book and to be held for deposit — Counsel for defendant (interrupting): Your Honor, I will shorten this case by conceding all that.  *  *  *  Witness (continuing): And I asked

when I could get the book and they told me in about two months and I went there constantly for the book and I have not received the book yet."

This testimony, which was given upon his direct examination, was reiterated by him as follows: " Q. At that time did they state they would give you a book representing that deposit in Petrograd? A. Yes, they told me they would get back a book from Petrograd in two months time and I went back again a number of times and they told me they did not receive it yet. Q. When was the last time you went down and asked for this book? A. I asked them the last time in December, Nineteen twenty-three and they told me they did not receive the book as yet. The last time I asked for the book they told me they just had a typewritten sheet in a large book that they had the money there. Q. Have any other talk with them at that time? A. I asked them what they would do about it and they said the money was sent there and I said I should receive a book, and they said the book was sunk on a boat. Q. Ask for your money back? A. I asked for the money and they told me they would not give me my money, but they would give me ten per cent if I wanted to settle. * * * Q. Ever get any book from the State Bank showing a deposit in any other bank in Russia? A. No."

On cross-examination he was asked: " Q. You say you came to the bank about two months after November, Nineteen sixteen and they told you they did not have a bank book? A. Yes, they told me to wait. Q. How many weeks after that did you go to the Bank? A. After what? Q. After the two months after November, Nineteen sixteen? A. I went about two months later and they told me to still wait. Q. Told you at that time that the money was deposited in the Imperial Bank at Petrograd, Russia? A. They did not say that the money was received there, but they told me they sent the money out. The Court: To where? The Witness: Petrograd. The Court: What Bank? The Witness: Government Bank."

The defendant's agent Bornstein testified he did not know how many times plaintiff asked for the money or book; that defendant never gave him a book or provided him with anything to permit him to withdraw the money from the Russian bank. Bornstein further testified that he did transmit these rubles to the Russian Imperial Savings Bank, Petrograd, through C. B. Richards & Co., on November 17, 1916, the day plaintiff came into the bank, in corroboration of which a letter dated February 8, 1924, addressed to defendant's attorney was admitted and received in evidence without objection. It reads:

" Established 1847                    Foreign Department

" C. B. RICHARDS & Co.

    " Bankers,          Money Order and Draft Service

       " 29 Broadway,

          " New York,

  " Cable address:  Richard, New York

                                           " *Feb.* 8, 1924.

" Mr. MAX SILVERSTEIN,

      " 309 Broadway,

         " New York City.

  " Re:  State Bank Dft #18806/30036 Rs. 3,000 in favor of the Imperial Savings Bank, Petrograd.

  " DEAR SIR.— Replying to your esteemed favor of the 6th inst., would state that the above draft was advised to the Russian Commercial & Industrial Bank in. Petrograd on Nov. 17, 1916, on list #19.   We have been debited with the amount of the above draft on Jan. 22/4, 1917.

  " We had no instructions to issue Bankbook in favor of Gregory Wakulaw, and were only to protect draft, which we did, on date above mentioned.      " Yours very truly

                         " C. B. RICHARDS & CO.,

" RB:SB.                              R. BAMA."

This action, which is for money had and received, is based upon breach of contract and is governed by the six-year Statute of Limitations, which statute began to run from the time of the breach and not from the time when the plaintiff received knowledge of the facts which he contends constituted the breach of the contract. (*Wood* v. *Young,* 141 N. Y. 211, 217; *Mills* v. *Mills,* 115 id. 80, 85; *Roberts* v. *Ely,* 113 id. 128, 133.)

The testimony of plaintiff shows that his alleged cause of action arose at the expiration of the two months' period after November 17, 1916, to wit, January 17, 1917.

The relationship between the parties being contractual only and wholly non-fiducial (*Legniti* v. *Mechanics & Metals Nat. Bank,* 230 N. Y. 415, 419), any cause of action against defendant was barred January 17, 1923, six years after the alleged cause of action accrued (Civ. Prac. Act, § 48), and this action, which was not instituted until February 4, 1924, cannot be maintained.

Section 59 of the Civil Practice Act provides:

" § 59.  Acknowledgment or new promise must be in writing. An acknowledgment or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take a case out of the

operation of the provisions of this article relating to the limitations of time within which an action must be brought other than for the recovery of real property. But this section does not alter the effect of a payment of principal or interest."

No acknowledgment or promise in writing or otherwise was made by defendant to take the transaction out of the statute.

In *Shapley* v. *Abbott* (42 N. Y. 443) the court said (at p. 451): " The policy of the statute, requiring that every promise or acknowledgment, to take a case out of the statute, shall be in writing, signed by the party to be charged, is to prevent fraud and perjuries. And it is the duty of courts so to administer the law as to uphold this policy. If a parol promise not to plead the statute is to be held operative, either as a waiver, or an agreement, or by way of estoppel, to subvert the statute, then all the mischief as this case shows, will be let in which it was the policy of the law to shut out."

If a mere request of a debtor for delay in the performance of a contract would estop him from pleading the statute, the policy of the law relative to the Statute of Limitations would be subverted.

The determination of the Appellate Term should be reversed, with costs, and the judgment of the Municipal Court affirmed, with costs to appellant in this court and at the Appellate Term.

CLARKE, P. J., and FINCH, J., concur; MERRELL and MARTIN, JJ., dissent on authority of *Bykowsky* v. *Public Nat. Bank* (209 App. Div. 61; affd., 240 N. Y. 555).

Determination of Appellate Term reversed and judgment of the Municipal Court affirmed, with costs to the appellant in this court and in the Appellate Term.