MAX SCHOCHET, Respondent, *v.* THE PUBLIC NATIONAL BANK OF NEW YORK, Appellant.

Supreme Court, Appellate Term, First Department, June 8, 1926.

Banks and banking — plaintiff's assignor deposited money with defendant for transmission to Russia within reasonable time — time for delivery of bank book, showing transmission of funds, extended at defendant's suggestion upon lapse of repeated periods of approximately three months — plaintiff rescinded contract in June, 1921, when arrival of wife made transmission of no avail — action against bank for money had and received begun in July, 1925, not barred by six-year Statute of Limitations.

Plaintiff's action against defendant, a bank, for money had and received was brought within the six-year period of the Statute of Limitations, since it appears that the defendant in August, 1917, agreed with plaintiff's assignor to transmit money to Russia within a reasonable time, indicated by defendant to be about three months; that upon defendant's suggestion and plaintiff's acquiescence the time was extended upon the termination of repeated periods of approximately three months until June, 1921, when upon the arrival in this country of plaintiff's wife to whom the money was to be delivered, rendering further efforts at transmission unavailing to plaintiff, plaintiff rescinded the contract for nonperformance and commenced this action in July, 1925. The action accrued in June, 1921, upon defendant's refusal to meet plaintiff's demand for the money deposited with the defendant for transmission and the consequent breach of the extended agreement.

APPEAL by defendant from a judgment of the Municipal Court, Borough of Manhattan, Second District, in favor of plaintiff, after a trial by a judge without a jury.

*Moses & Singer* [*Albert E. Kane* of counsel], for the appellant.

*Mark E. Cymrot,* for the respondent.

BIJUR, J. The trial judge was warranted in believing on the evidence that on August 14, 1917, plaintiff's assignor (hereinafter called plaintiff) deposited with the defendant for the purpose of transmitting the equivalent in the foreign money to his family in Russia, $440; that defendant agreed to return to plaintiff a bank book evidencing the deposit abroad; that defendant's officer told plaintiff the book would be returned in three months or " after three months; " and that plaintiff called at the expiration of that time and was told that the bank could not " get any answer from over there because they are fighting." He returned three months later and continued to call at intervals of three months and was always informed that " they were fighting and that the bank could not get into touch with them." In June, 1921, plaintiff's wife arrived here from Russia, whereupon he went to the bank, informed it of that fact and asked for the return of his original deposit. This action was begun in July, 1925.

Defendant appellant's position is stated in its brief as follows: " that this action, which is based on breach of contract, is governed by the six years Statute of Limitations; that this statute began to run from the time performance was due, which was the date of the breach of contract, *i. e.*, November 1917 or at the latest February, 1918, and that the time provided for by this statute to commence suit expired about two years before the service of the summons herein." In support he cites the recent decision of *Wakulaw* v. *State Bank* (214 App. Div. 673) which, notwithstanding respondent's argument to the contrary, is practically indistinguishable from the present case and would require a reversal were it not for a consideration now urged which was either not pressed, or perhaps not even called to the attention of the court, in the *Wakulaw* case. In that case, as appears from the opinion, the essential point discussed was whether the Statute of Limitations could be tolled by a mere request of the debtor bank for indulgence, a question answered in the negative. Here the point presented is that the defendant bank's repeated assertions to the plaintiff that the transmission had not yet been accomplished because of the disturbed conditions in Russia and plaintiff's corresponding visits after each interview evidence an extension of the time of performance of the original agreement by mutual consent; that there was no breach of that

agreement until plaintiff finally refused further extensions of time; and that, consequently, the Statute of Limitations did not begin to run until June, 1921. That no such question was considered in the *Wakulaw* case seems evident also from the fact that two of the justices of the court dissented on the authority of *Bykowsky* v. *Public Nat. Bank* (209 App. Div. 61; affd., 240 N. Y. 555) in which there was no basis in fact for the claim, nor any suggestion of counsel, that the time for performance had been extended by consent or otherwise.

Plaintiff in the instant case testified that he called at the defendant bank on August 14, 1917, and deposited $440 for which he received a receipt which recited that the money was for transmittance by mail of 2,000 rubles subject to certain conditions printed on the receipt, none of which are material to the present controversy; that he said that he wanted the money sent to a Russian bank which would transmit it to his family in Russia; that he " was to get a receipt or a bank book." " Q. Did he tell you it would take three months? A. Yes." Later he testified: " Q. Did he tell you how he was going to do it? A. He said he would send it to Russia, the $440, and after three months I would get an answer." On his visit three months later the bank officer said " the money can't be delivered * * * he said they were fighting in Russia. * * * Q. What did you do then? A. He told me maybe three months later he would get something." Again he testified: " In February, 1918, that's what he told me — three months later I'll get an answer because my money — " Plaintiff also said that he made a similar inquiry about a dozen times at regular intervals.

The first question which arises is whether defendant's agreement, on this evidence, included the delivery of a bank book or receipt within a fixed time, or whether the statement about the time was merely the indication of a period which the parties considered reasonable under the circumstances, and that both parties continued to treat the question of time in that spirit. In my opinion the latter construction is the correct one. Moreover, the testimony that plaintiff was told that he would get the book " *after* three months " indicates that whether it be regarded as an agreement or an expression of opinion it was not the intention of the parties to fix a definite time for the delivery of the book, but merely an approximate time. The fact that no date was fixed, and that the book was promised either " in three months " or " after three months " indicates, what the conduct of the parties thereafter confirms, that at best the period contemplated to elapse before the delivery of the book to plaintiff was merely approximate. It must be observed at the outset that whether we view the agreement

as one fixing a definite or an approximate or merely a reasonable time for performance, no such question as was considered in *Trainor Co.* v. *Amsinck & Co., Inc.* (236 N. Y. 392) is involved, because defendant makes no complaint that it was not, in any event, afforded ample opportunity to carry out its agreement.

As to the legal significance of the various interviews between plaintiff and defendant, it seems manifest that defendant was excusing or explaining its non-performance and either asking for, or suggesting that it be accorded, further time *and that plaintiff acquiesced in each such request.*

Plaintiff had deposited his money with defendant for transmission abroad.   Defendant remained in possession of the money without any objection on plaintiff's part, and without any offer of the defendant to return the same.   The repeated inquiries of the plaintiff and the responses of defendant suggesting the possibility of the transmission being accomplished if further delay were accorded, would be inexplicable except upon the theory that both parties wished and understood that the contract was being kept alive and the time of performance either definitely or indefinitely extended.   That such extension is valid and effective at law whether made before or after breach is established by numerous authorities. Thus, Mr. Justice WILLARD BARTLETT said in *Farrington* v. *Brady* (11 App. Div. 1, 2): " Before the breach of a written contract not under seal, it may be modified, or the performance thereof wholly waived by the oral agreement of the parties, provided the substituted contract is not one which the Statute of Frauds requires to be in writing.   *   *   *." To the same effect in *Clark* v. *Dales* (20 Barb. 42–46).

In *Homer* v. *Guardian Mutual Life Ins. Co.* (67 N. Y. 478, 481) the court wrote: " The time for the performance of contracts by specialty, as well as simple contracts, may be extended by parol, and when so extended it is as if the extended time was written in and made a part of the original contract, every other provision remaining intact, and to be carried out with the single modification as to time.   *   *   *"

It is not necessary to decide whether the extension becomes effective by an application of the doctrine of substituted contract or the theory of estoppel or of waiver of a condition.   (See Williston Cont. §§ 679, 680; *Firestone* v. *Miroth Construction Co.*, 215 App. Div. 564; *Thomson* v. *Poor*, 147 N. Y. 402, 409, 410.)

The opinions quoted, like many others, state a rule to be followed in the event of an extension of time before breach and in a number of text books and cases will be found statements to the effect that after breach a mere extension of time of performance without a

new consideration is ineffective at law. When the cases cited in support of the latter proposition are examined, however, it will be discovered that in a large part they are not germane and that generally when they have any bearing on the issue they involve the question whether the payment by a debtor of part of a debt is consideration for a valid extension of the time of payment of the balance — a question which is readily answered in the negative on the application of the doctrine of *Vanderbilt* v. *Schreyer* (91 N. Y. 392) and many similar cases, *i. e.,* that the mere reassertion of an obligation by which a party is already bound affords no consideration for a new or different stipulation from the other contracting party. The instant case, however, is altogether different. No extension of the time of " payment " of a stipulated price is involved. It is the extension of time either to perform a service or to deliver a commodity, whichever view may be taken of the transaction. It must be apparent from our daily experience in the business world that an agreement to perform a service or to deliver an article on a later date involves an act altogether different in value from an agreement to perform the like service at an earlier date. Substantially the whole of our commercial life is governed or inspired by that consideration, exemplified by changing market values. When, therefore, the plaintiff forebore either from rescinding the contract, as it is sometimes called, or from claiming damages for breach (if such there was) in consideration of defendant's agreement to perform the service or deliver the article at a later date he received a promise essentially different from the original one, and one which might have been very much less or very much more valuable to himself, as subsequent events might determine. With the widsom of his bargain we are not concerned. That it constituted consideration for his agreement to extend the time of performance seems to me to be clear. In some cases the same conclusion has been reached after elaborate discussion, as, for example, *Hutton* v. *Tullis* (93 Misc. 548). In others the principle appears to have been taken for granted. Thus in *Mawhinney* v. *Millbrook Woolen Mills* (234 N. Y. 244, 250) the court said, per POUND, J.: " Defendant herein was in default on July 31, 1917. Its time for performance was extended by plaintiff's letters [of August 24th, October 4th and October 17th] to a reasonable time after October 17, 1917."

My summary of the instant case is, therefore, that defendant, in August, 1917, agreed to transmit plaintiff's money to Russia within a reasonable time, indicated by defendant to be approximately three months; that whether before or after breach, upon defendant's suggestion and plaintiff's acquiescence the time was extended upon the lapse of repeated periods of approximately three months until

June, 1921, when the arrival of plaintiff's wife in America rendered further efforts at transmission of no avail to plaintiff. Thereupon plaintiff rescinded the contract for non-performance by defendant. Plaintiff's cause of action for money had and received, namely, for the return of what he had paid for the service contracted for, accrued in June, 1921, upon defendant's breach of the extended agreement, and this action is brought well within the six-year period of the Statute of Limitations. (*Bank of United States* v. *National City Bank*, 123 Misc. 801; affd., 214 App. Div. 716; *Richard* v. *Credit Suisse*, 242 N. Y. 346.)

Judgment affirmed, with twenty-five dollars costs.

Lydon, J., concurs.

Levy, J. (concurring). I fully concur. There were present here, due to the claim of defendant that it was unable to perform, because of circumstances beyond its control, very definite arrangements mutually consented to, for repeated extensions of the time of performance, leading to June, 1921. In that month plaintiff assignor's family arrived in America and it thus became utterly worthless, as it was impossible, to attempt to transmit the moneys for their benefit abroad. Thereupon, plaintiff assignor elected to rescind, and the demand for the sum yielded up having been refused, this cause of action then accrued. The Statute of Limitations did not bar the action, since it was commenced in 1925. On the other hand, if defendant could have performed, but utterly failed or neglected to do so, without fault on plaintiff assignor's part, the well-known legal maxim "*Nul prendra advantage de son tort demesne,*" would seem to apply, very likely on the theory of estoppel *in pais.* The trite saying of Lord Kenyon that one shall not be permitted to " blow hot and cold " with reference to the same transaction, would appear also to apply here with equal force.