BANK OF UNITED STATES, Plaintiff, *v.* NATIONAL CITY BANK OF NEW YORK, Defendant.

Supreme Court, New York Special Term, October 23, 1924.

**Contracts — action to recover back money paid for draft issued by defendant on Russian bank — motion by plaintiff under Rules of Civil Practice, rule 113, for judgment on pleadings — complaint alleges that draft was not paid and that nearly six years after agreement was made plaintiff demanded restitution which was not made — plaintiff is entitled to disregard contract and sue for restitution at any time after breach and before expiration of Statute of Limitations — rules relating to technical rescission are not applicable — defendant's affidavits failed to raise issue as to non-payment of rubles — defendant's denial that plaintiff rescinded agreement within reasonable time does not raise issue — plaintiff not estopped by delay in commencing action.**

The rules applicable to technical rescission of a contract which require that the contract must be rescinded within a reasonable time after discovery of the right of rescission do not govern in the case of a breach of the contract.

The injured party to a contract that has been breached by the other party is not bound to notify the other party within a reasonable time after the breach that he elects to disregard the contract, but he may, at any time after breach and prior to the expiration of the Statute of Limitations, elect to treat the contract as subsisting and sue to recover damages for its breach or elect to disregard the contract and sue to recover the amount that he has paid thereon.

Accordingly, in an action to recover back the amount paid to a bank for a draft drawn by it on a Russian bank in which the complaint alleges that the draft was not paid and that nearly six years after the breach of the contract the plaintiff demanded restitution of the amount paid for the draft, the plaintiff is entitled to judgment on the pleadings, where the defendant's affidavits, on the question of non-payment of the draft, merely state that on the receipt of further advices it might be shown that the draft had been paid and on the question of rescission, deny that the plaintiff rescinded the contract. The allegations in the defendant's affidavits as to the non-payment raise no issue on that question, and its denial of rescission based on the fact that the plaintiff did not elect to disregard the contract within a reasonable time after its breach, raises no issue, since the plaintiff was not required to so elect.

The delay by the plaintiff in commencing the action does not estop it, since the plaintiff did nothing during the period of delay to induce the defendant to change its position to its detriment.

MOTION by plaintiff for judgment on the pleadings under rule 113 of the Rules of Civil Practice.

*Guthrie, Jerome, Rand & Kresel,* for the plaintiff.

*Shearman & Stirling,* for the defendant.

BIJUR, J.  This is a motion by plaintiff for judgment under rule 113.  In my opinion nothing but a question of law is involved, as upon the affidavits I find no issue of fact presented.

Plaintiff on or about September 1, 1917, paid defendant some $10,500, for which the defendant delivered its draft for 50,000 Russian rubles on a bank in Moscow. On or about November 5, 1917, the plaintiff, learning that the draft had not been paid in Moscow (for reasons which are not adverted to by either party and may, therefore, be disregarded), made the following arrangement with the defendant: That the latter should stop payment on the draft; that the plaintiff would indemnify the defendant for any loss by reason of the same being outstanding, and (as plaintiff claims) to transmit forthwith by cable transfer to a bank in Petrograd the equivalent sum of 50,000 Russian rubles. Defendant claims that the agreement on its part was not to transmit the money, but merely to cable its correspondent, requesting it to make the payment. As I shall point out, I do not think that plaintiff's cause of action is affected by the adoption of either version of the alleged agreement.

The rubles were not paid by the bank in Petrograd, and on October 27, 1923, plaintiff notified the defendant of the non-payment, adding: " We hereby rescind said agreement and demand that the amounts paid by us be returned, together with interest," etc. It is for the restitution of the money originally paid by it to the defendant that plaintiff now sues.

I do not agree with defendant's contention that its affidavits raise an issue as to the non-payment of the rubles in Petrograd. The non-payment seems to be clearly established by plaintiff, and defendant has nothing to say in regard thereto further than that on receiving further advices it might discover that the amount had been paid and that owing to events in Russia it is quite natural that there would be difficulty in ascertaining the facts. Such vague suggestions present no triable issue.

Defendant's more serious, and, as I understand it, chief, contention is that its denial that plaintiff rescinded the contract raises a material issue. This refers to the fact that the attempt to rescind was not made until nearly six years after the contract, and defendant's counsel cites *Gravenhorst* v. *Zimmerman*, 236 N. Y. 22, 38, as authority for the proposition that the right was thus waived, quoting the language of the court: " Under the circumstances one person may argue that as matter of law the assignor abandoned and lost the benefit of his rescission; another might think that such abandonment was a question of fact for the jury."

This, however, was said in commenting upon the course of the plaintiff in that case who had apparently taken various and perhaps varying positions in regard to the transaction and written a number of communications designed to express its attitude. No such

situation is presented in the present case. Defendant, however, in substance, contends that the right of a party to rescind a contract must be exercised without unreasonable delay, again citing the *Gravenhorst* case and *Taylor* v. *Goelet,* 208 N. Y. 253. I think it quite evident that the defendant has misconceived the nature of the present action and the application thereto of the cases cited. The subject of rescission of a contract and the subsequent rights and obligations of the respective parties has been the subject of much recent consideration by the courts and text writers. The action before me would ordinarily be called one for money had and received. It arises because defendant, having received full payment from plaintiff for defendant's stipulation to perform a certain act, has wholly failed to perform it. It is said, without due regard to the full significance of the word, that plaintiff may either sue for damages for breach of contract or " rescind " the agreement and recover back the consideration paid. The use of the word " rescission " in such a case, however, has been severely criticised and has undoubtedly led to serious misunderstanding. True rescission which results in a cancellation of the contract or obligation *ab initio (Henderson Case, infra),* it is true, is a remedy which must be promptly availed of by a party in an appropriate case as soon as he becomes aware of the facts entitling him thereto. *Hennessy* v. *Bacon,* 137 U. S. 78; *Grymes* v. *Sanders,* 93 id. 55. These are generally cases of fraud in which the party rescinding has received the whole or a large part of the property involved, and not only must notice of election be given, but it must be accompanied by its corollary, *i. e.,* a return of the benefits received. The reason for such prompt election and tender is given by Swayne, J., in the *Grymes Case, supra.* " He [the rescinding party] is not permitted to play fast and loose. * * * These remarks are peculiarly applicable to speculative property, * * * which is liable to large and constant fluctuations in value." The principle is based on the consideration of natural justice that while the defrauded party shall be protected against loss and restored to his *status quo,* the one who commits the wrong shall not be made the subject of a new and unwarranted speculation nor be punished beyond the necessity of making the one defrauded whole. In cases of breach of contract, however, as pointed out by Woodward in his work on Quasi Contracts (1913, §§ 260-267), the action for money had and received is not based upon a true rescission, but is merely an alternative remedy to an action for damages, quite similar to the like alternative remedy in case of certain torts. § 270. It originated in the gradual conviction of the courts that justice demanded that it be awarded. Indeed Professor Woodward does

**804** BANK OF UNITED STATES *v.* NATIONAL CITY BANK OF N. Y.

Supreme Court, October, 1924. [Vol. 123

not consider the action as properly included within the field of quasi contracts. §§ 260, 261. Woodward says (§ 270): " The use of the word ' rescission ' in this connection is unfortunate and confusing. * * * What the term really means, when used with reference to the right to restitution, is that, upon the repudiation or substantial breach of a contract, the injured party may elect to *disregard* his contract * * * and demand restitution in value for what he has done."

The cause of action for " money had and received " arises immediately upon the breach. The injured party is entitled to pursue either remedy within the time allowed by the Statute of Limitations. Woodward (§ 267) cites as authority for this proposition *Finch* v. *Parker*, 49 N. Y. 1. Professor Williston, in section 1469 of his work on Contracts, says: " There seems no reason why a plaintiff who has paid a sum of money for the defendant's promise to give him a horse, may not, after breach of his promise by the defendant, wait any period short of that fixed by the Statute of Limitations before deciding whether to sue for the value of the horse or for the recovery of the price." The suit itself is a sufficient demand. *Raymond* v. *Bearnard*, 12 Johns. 274.

Even if the view of the character of the action taken by the text writers quoted by me were not correct, I can see no reason for requiring any notice on the part of the plaintiff earlier than during the term of the statutory period of limitations. Our courts in *Trainor Co.* v. *Amsinck & Co., Inc.*, 236 N. Y. 392, and *Henderson Tire & Rubber Co.* v. *Wilson & Son*, 235 id. 489, have placed a marked stop upon the tendency to treat a defaulter on a contract with great tenderness and to place upon the innocent party so great a burden of notification as to almost cause a reversal of the correct moral position of the parties. It still remains true that where the innocent party has received benefits under a contract he should return them if he disaffirms the obligation of the agreement; also that where by his license to proceed with the work upon his property, or by similar steps, he has led the party in default into the belief that the contract was being kept alive and such party has by reason thereof substantially changed his position to his detriment rescission should not be allowed at all or only upon terms which are reasonable under the circumstances. *Taylor* v. *Goelet, supra.* It is self-evident that unless the election required to be made be final and conclusive it is of no juridical importance and that a notice thereof would be a mere idle ceremony; but finality is now accorded to election with marked hesitation in contradistinction to the view which obtained at the time of the decision of *Terry* v. *Munger*, 121 N. Y. 161. In its last analysis, and in the light of recent

discussion, " the doctrine of election is really an application of the doctrine of estoppel." Professor Corbin, " Waiver of Tort and Suit in Assumpsit," 1910, Yale Law Journal 221, 239. This also is the opinion of Professor Woodward (§ 298) and Professor Williston (§ 1469). In *Schenck* v. *State Line Tel. Co.*, 238 N. Y. 308, 312, the Court of Appeals, speaking by Cardozo, J., says: " Indeed it is probable that some element either of ratification or of estoppel is at the root of most cases, if not all, in which an election of remedies, once made, is viewed as a finality." The same view is expounded at some length in *Standard Oil Co.* v. *Hawkins*, 74 Fed. Rep. 395, and was recognized in *Prindle* v. *Anderson*, 19 Wend. 391, 395.

In the present case it is quite clear that plaintiff has nothing to rescind. On the contract date defendant had not performed its agreement.. Nothing remained of the contract. Plaintiff had received nothing and defendant had plaintiff's money. Plaintiff had nothing upon which to speculate. The amount of recovery in his action for damages was fixed, and the amount for which defendant was liable to him by way of restitution was established beyond possibility of change. Defendant could not be misled, for it knew, or was bound to know, the exact situation with all its possibilities. Having received nothing, plaintiff has nothing to tender back; having done nothing to induce or aid the defendant to change its position, he is not subject to any claim of estoppel or waiver.

Whatever application defendant might find in certain phases in *Taylor* v. *Goelet, supra,* is, I think, completely disposed of by the more recent interpretation of that decision in *Trainor Co.* v. *Amsinck & Co., Inc., supra.*

Defendant's version of its undertaking is that it did not agree to deliver the 50,000 rubles in Petrograd, as claimed by plaintiff, but merely as a favor to cable its correspondent requesting that such payment be made. I have said that the cause of action was not affected by this controversy as to the nature of the stipulation. If defendant agreed to make the payment, plaintiff is entitled to recover upon the breach; if defendant's stipulation, as contended by it, was merely to render a courtesy, there being no doubt that the original transaction, namely, the purchase of the draft, was rescinded, defendant must be regarded as in the position of having possession of plaintiff's money without any agreement in reference thereto outstanding, and plaintiff is all the more clearly entitled to recover on that hypothesis.

Motion granted.