JOSHUA PARKER, Appellant, *v.* OLGA I. HOPPE, Respondent.

First Department, March 6, 1931.

*Harris Jay Griston,* for the appellant.

*Thomas Kiernan* of counsel [*White & Case,* attorneys], for the respondent.

MARTIN, J. The question here involves the right of the plaintiff to recover the United States dollar value of foreign currency (rubles) on the day of payment to the defendant.

The complaint seeks to recover $32,258.06, with interest from August 24, 1917, the American equivalent, at the rate of 3.10 rubles to the United States dollar, of a deposit of 100,000 rubles made by the plaintiff's assignor, being the value of the rubles as of the date of the deposit. The payment was made by the assignor of plaintiff on account of the purchase price of paraffine wax which the defendant failed to deliver. The rubles were deposited by defendant in her bank account in Moscow, Russia, and thereafter used by her to pay her obligations to others.

The value of the ruble given to the defendant on August 11, 1917 (August 24, 1917, United States style), plaintiff says was actually 3.10 rubles per dollar. To avoid protracted litigation,

plaintiff has agreed to accept, for the purposes of this motion and appeal, the rate value admitted by the defendant, as being the correct value, namely, 4.41 rubles per dollar, or 22.676 cents per ruble. At that rate the United States equivalent of the 100,000 rubles paid to the defendant is the sum of $22,676.

There appears to be no substantial dispute with reference to the contract between the parties. B. B. Hoppe & Company sold to Kamendrovsky, plaintiff appellant's assignor, on the basis of the customs and railway tariffs then in force, and of existing duties, " with no obligation on our [B. B. Hoppe & Company's] part till shipment from England to Archangel about five thousand poods " of Scotch paraffine of a certain quality at twenty-four rubles per pood, " franco Archangel, out of the lot bought by us abroad and expected at Archangel during the present navigation season, a delay in the delivery not giving you the right to refuse to accept the goods. Payment: In payment of the above agreement you are to remit us now, rubles 100,000 — the rest immediately on delivery of the goods at Archangel, delivery to be effected on satisfactory arrival at Archangel, dependent on the shipment of goods as mentioned above *force majeure* being excepted."

The receipt for the rubles given by B. B. Hoppe & Company is as follows:

" B. B. HOPPE & Co.
" Moscow.

" Received from Mr. F. S. Kamendrovsky on the contract dated Aug. 10th, 1917, for 5,000 poods of Paraffine One hundred thousand Rubles for which this receipt is issued.

" Moscow, *Aug.* 11th, 1917.
" TRUSTEE OF B. B. HOPPE & Co.
" G. MARNITZ.
" Rub. 100,000."

Although the plaintiff's assignor paid the 100,000 rubles, no effort to perform the contract appears to have been made by the defendant. The defendant not only received the rubles but apparently used them and made a profit on the transaction.

The complaint sets forth that the defendant left Russia in August, 1917, and has since resided in this country; that the plaintiff's assignor has repeatedly demanded the return of the rubles of the same value as delivered to the defendant, but has not received them; and that prior to the commencement of this action the original owner thereof duly assigned the claim to the plaintiff herein. The answer admits that the defendant was the full partner of the firm of B. B. Hoppe & Company, in Moscow, engaged in the importing business; that Hoppe & Company entered into the contract in question with the plaintiff's assignor; that

the defendant left Russia in August, 1917, and since her arrival here has resided within the State of New York; that one Kamendrovsky, plaintiff's assignor, made demand for the payment of money on account of said 100,000 rubles as deposited, and that defendant has never paid any part thereof and also admits various negotiations concerning this matter, as shown by the letters annexed to the complaint.

The answer contains two alleged defenses: the first to the effect that due to the Bolshevik revolution in Russia and the impossibility of importing goods from England, defendant was unable to perform the contract in question and that on several occasions she tendered and offered to pay back the 100,000 rubles deposited by plaintiff's assignor with Hoppe & Company. The second defense is the six-year Statute of Limitations.

By the first defense it is admitted that the defendant failed to perform the contract, but it is asserted that on several occasions the defendant offered to pay back the 100,000 rubles deposited by the plaintiff's assignor. Of course this offer to repay was at a time when the rubles were of little or no value. The defendant's inability to perform the contract is not a defense to the action to recover the amount paid by the plaintiff, and under the decisions dealing with this subject the offer to return worthless rubles at a subsequent date is not a defense.

There can be no doubt that this action is to recover money had and received by the respondent, in accordance with the remedy suggested by the decision in *Bank of United States* v. *National City Bank of New York* (123 Misc. 801).

It is the respondent's contention, however, that the cause of action did not arise until the date of the breach of the contract, and that this date is one of the outstanding questions of fact which cannot be determined upon this appeal. If the plaintiff is to recover damages for the breach, it would seem that he would be limited to the value of the currency upon the day of the breach. If he sues in rescission, thereby entitling him to restitution, he is entitled to be repaid that which he paid at its value on the day he paid it. (*Bank of United States* v. *National City Bank of New York, supra.*)

In *Richard* v. *Credit Suisse* (242 N. Y. 346) the Court of Appeals said: " Non-performance being proved, there remains the question of the remedy. The plaintiffs ask for restitution. The defendant would limit them to damages. Rescission, it is said, is inequitable because of silence and inaction. Banking at Warsaw was impeded by a state of war between Soviet Russia and Poland. The defendant did not repudiate its contracts, nor refrain altogether from some effort to perform them. Its plight is due in part to the

default of some one else, its chosen correspondent. Out of this predicament, there have emerged in the defendant's view new equities and duties that might not call for recognition if the default had been intentional. In such a situation, the plaintiffs, it is said, should have investigated for themselves the state of Lesser's credits and their own within the territory of war, and given warning to the defendant whether they rescinded or affirmed.

" We think the right to restitution continues unimpaired.

" There is a distinction between rescission for fraud, which goes upon the theory that a contract is to be treated as non-existent for lack of true assent, and rescission for abandonment, which goes upon the theory that a contract is avoided for non-performance though valid in its origin. In the one situation, notice of rescission must follow promptly upon discovery of the fraud."

In *Schochet* v. *Public National Bank* (220 App. Div. 201) the court said: " The plaintiff declares upon the validity of the contract and its breach as the basis for his claimed restitution. As is stated by BIJUR, J., in *Bank of United States* v. *National City Bank* (123 Misc. 801; affd., without opinion, 214 App. Div. 716), referring to a cause of action similar to the one here under consideration: ' It arises because defendant, having received full payment from plaintiff for defendant's stipulation to perform a certain act, has wholly failed to perform it. It is said, without due regard to the full significance of the word, that plaintiff may either sue for damages for breach of contract or " rescind " the agreement and recover back the consideration paid. The use of the word " rescission " in such a case, however, has been severely criticised and has undoubtedly led to serious misunderstanding.' "

This latter case also disposes of the question of the Statute of Limitations. There is an additional ground, however, why the Statute of Limitations is not a defense to this action, to be found in the letters, one of the 6th day of June, 1927, which admitted the debt in the following language: " I received your letter of April 26th and it distresses me extremely to hear of your ill fortune. I wish there were something I could do to help you. But as you know, I have never considered that the firm of B. B. Hoppe & Company owed you anything except the return of your rubles, which you may receive at any time you wish, and as for sending you funds which neither I nor the Company owe, that is quite out of the question in my present circumstances.

" I know that this is not the kind of a reply you want, but unfortunately and to my great regret, it is the only reply I can make. Very truly yours,

" OLGA I. HOPPE."

In *Schochet* v. *Public National Bank* (*supra*) the court further said: " and where money is paid over under a contract which the defendant totally fails to perform, the duty to return cannot arise until breach or repudiation."

When we consider the correspondence, therefore, the defense of the Statute of Limitations in any event must fall.

The documentary proof and admissions in this case establish substantially all the facts. The defendant admits the contract, the receipt of the 100,000 rubles, its deposit in the defendant's bank account, the use of a part or the whole thereof by defendant and the failure to perform the contract or return the rubles or their value to plaintiff.

In an effort to show that the ruble was not worth the amount claimed by plaintiff the defendant has established the value which the plaintiff will now accept.

In view of the admitted facts, the plaintiff is entitled to judgment. The several decisions above quoted state the rule which must be followed in such a case, and require that the plaintiff have judgment for $22,676 with interest from August 24, 1917.

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the motion for summary judgment granted, with ten dollars costs.

FINCH, MCAVOY and O'MALLEY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.